GROOVER, STUBBS & COMPANY, plaintiffs in error, vs. WARFIELD & WAYNE, defendants in error.

[McCay, Judge, was providentially prevented from presiding in this case.]

1. A sale and delivery of cotton for cash to the amount of $50 00 or more, with a "sale ticket" or memorandum in writing, signed by the seller, is a contract binding on the buyer, under section 1950, Code, and the vendor can recover damages from the purchaser for the breach thereof in returning the cotton and refusing to pay for the same, notwithstanding, under section 1593, the cotton, by reason of the non-payment, did not become the property of the buyer, nor the ownership thereof given up.

2. Under said section 1950, a sale of cotton to the amount of $50 00 or more, without any memorandum signed by the buyer or by some person by him lawfully authorized, or an acceptance and actual receipt of the cotton, or part thereof by him, and where nothing is given in

Groover, Stubbs & Company *vs.* Warfield & Wayne.

earnest to bind the bargain, or in part payment, is not binding on the buyer.

3. Cotton factors can, in their own names, recover all the damages resulting from a breach of contract by the buyer of cotton from them, although they may be bound to pay the same, when recovered, to their consignors.

4. The measure of damage in such a case is the difference between the contract price for the cotton and the value thereof on the day of the breach.

5. As the jury did find, on the facts of the case, in favor of the plaintiffs, so far as to give them nominal damages, and as we are of opinion that they were probably misled by the charge of the Court on this point, and by the further charge limiting the right of recovery "to the amount of damages actually sustained by the plaintiffs themselves," when it appeared in evidence that the damages recoverable would enure to the benefit of plaintiffs' consignors, we think that a new trial should be granted.

Statute of frauds. Part performance. Factors. Damages. Before J. R. SAUSSEY, Esq., Judge *pro hac vice*. City Court of Savannah. May Term, 1873.

Groover, Stubbs & Company brought assumpsit against Warfield & Wayne for $1,000 00 damages, alleging, in substance, as follows: That on the 11th, 12th and 14th days of April, 1873, they sold to defendants two hundred and twenty-five bales of cotton, to-wit: sixty-seven bales on the 11th, eighty-six on the 12th, and seventy-two on the 14th, at prices ranging from sixteen to eighteen and a half cents per pound; that within a reasonable time after the dates of the sales they delivered to defendants seventy-two bales, fifty-eight bales of which were sold to them on the 11th of April, and fourteen bales on the 14th; that within a reasonable time they tendered to the defendants the remaining number of bales purchased by them; that the defendants, after having received said seventy-two bales, refused to keep and pay for the same and returned them to the plaintiffs; that they refused to receive and pay for the remainder of the two hundred and twenty-five bales purchased by them; that the price and value of cotton declined materially between the dates of these sales and the time of the breaches of the contracts by the defend-

ant, causing damage to the plaintiffs to the amount of $1,000. Pray process.

The defendants pleaded the statute of frauds.

The evidence established the allegations contained in the declaration. The only written evidence of the sale were various sale tickets or memoranda, which described the cotton sold by marks, and stated the prices, signed by the plaintiffs. As a specimen, the following is attached :

"SAVANNAH, GEORGIA, April 11th, 1873.

"Sold to Warfield & Wayne, on the following conditions, viz:

"No reclamation will be allowed by us on any cotton, unless the difference of qualities in any one bale is to the extent of one full grade ; and even in such case, no reclamation to be allowed unless claimed on delivery of the cotton :

| | | |
|---|---|---|
| R J S......... .............. | 1 bale cotton..................at 17 | cents. |
| H (in half diamond)..... | 8 bales cotton..............at 17 | cents. |
| N x H........... ...........14 | bales cotton..............at 17 | cents. |
| N I X.................18 | bales cotton..................at 18¼ | cents. |
| $\begin{smallmatrix}F\\E\ x\ O\end{smallmatrix}$ ..................... | 2 bales cotton..................at 18¼ | cents. |
| F (in a diamond) | | |
| E S E..................... | 2 bales cotton.......... ......at 18¼ | cents. |
| $\begin{smallmatrix}B\ P\\S\end{smallmatrix}$ ...................... | 2 bales cotton..............at 18¼ | cents. |
| J W M................ ....... | 2 bales cotton..................at 18¼ | cents. |
| M K (in a square)........ | 1 bale  cotton.................at 18¼ | cents. |
| J T R................. | 1 bale  cotton........ .........at 18¼ | cents. |
| B P...................... | 1 bale  cotton ........ .........at 18¼ | cents. |
| G S......................... | 1 bale  cotton... .............at 18¼ | cents. |
| J C S................. ..... | 4 bales cotton........ .........at 18¼ | cents. |
| B (in a diamond) ........ | 1 bale  cotton..................at 18¼ | cents. |
| $\begin{smallmatrix}J\ T\\T\end{smallmatrix}$ ...................... | 1 bale  cotton..................at 18¼ | cents. |
| S x D........ ,........ | 4 bales cotton.................at 18¼ | cents. |
| P V......................... | 1 bale  cotton.................at 18¼ | cents. |
| W (in a square)........... | 1 bale  cotton.................at 18¼ | cents. |
| G E O........................ | 1 bale  cotton.................at 18¼ | cents. |

66 bales cotton.

"GROOVER, STUBBS & COMPANY."

Groover, Stubbs & Company *vs.* Warfield & Wayne.

The seventy-two bales which were delivered to the defendants, the plaintiffs were compelled to take back, as they would not pay for them. Plaintiffs notified the defendants that they would sell the cotton on their account, and hold them responsible for the loss. They finally demanded the purchase price of the cotton on the 18th of April, and on the refusal of the defendants to pay, gave the above notice. The defendants gave to plaintiffs' cashier an order for the seventy-two bales on the 15th, which he received subject to the approval of his principals. Matters thus stood until the 18th. Cotton had, in the meantime, declined fully one-half cent per pound. The weights of the bales were shown, but unnecessary here to be set forth. The cotton was consigned to the plaintiffs for sale. At the time of the purchase by the defendants the various consignors were notified. They were also informed of the subsequent action of the defendants in the premises, and that it was the intention of the plaintiffs to institute suit for the damages sustained therefrom, and that they should receive their *pro rata* share of the recovery. The cotton was sold by sample, which were delivered to the defendants.

Other issues were made by the pleadings and evidence, not material to be herein embraced.

The Court charged the jury, among other things, as follows:

1st. That the sale tickets of the 12th and 14th of April, not being signed by the defendants, nor by any one by them lawfully authorized, are not sufficient memoranda in writing to take this case out of the statute of frauds.

2d. That the plaintiffs themselves must actually have sustained damages in order to recover.

3d. That the measure of damages in this case will be the difference between the contract price of the cotton and the price on the day of the breach.

To each of the aforesaid charges plaintiffs excepted.

The jury found for the plaintiffs $19 33. They assign error upon the above grounds of exception.

HOWELL & DENMARK, for plaintiffs in error.

1st. The action is properly brought. Plaintiffs in error have a right of action on these contracts; because,

(a) They are factors, contracting on their own credit.

(b) The contracts are made with them in their individual names. (The Court charged that the plaintiffs themselves must actually have sustained damages in order to recover:) Code, sec. 2209, par. 1, 3; 12 Ga., 578; Story on Agency, secs. 112, 393, 396, and references; 2 Par. on Cont., 2d Ed., 84, and references; 4 Mass., 257; Smith on Mer. Law, 209.

(c) As between factor and vendee, the former is sole owner of the goods: 1 Cowen, 645.

(d) For every legal right there is a legal remedy: Code, secs. 2243, 3250; 4 Ga., 264.

2d. Statute of frauds.

(a) The memoranda in writing, though not signed by the defendants, nor by any one by them lawfully authorized, are sufficient to take the contracts out of the statute of frauds, because the defendants accepted them as evidences of the contracts. (The Court below refused so to charge:) 1 Ga., 220; 25 Ibid., 391; 6 Cowen, 448, and cases cited; 17 Barb., 613; 2 Caine's, 117; Vol. 1., Book 2, Chitty's Blackstone, 448, note 15; 14 Howard, 456.

(b) If memoranda in writing are not sufficient to take the contracts out of the statute of frauds, the acceptance and actual receipt by the defendants of a part of the cotton sold are sufficient: Code, sec. 1950, par. 7.

(c) Further, there has been performance on one side. Side of plaintiffs accepted by the defendants, in accordance with the contracts: Code, sec. 1951, par. 2.

(d) Again, there has been such part performance of the contracts by the plaintiffs as would render it a fraud of defendants' refusing to comply: Code, sec. 1951, par. 3; 6 Ga., 623; 14 Ibid., 685; 30 Ibid., 98; 41 Ibid., 71, 75.

3d. Measure of damages. The Court charged that "the measure of damages would be the difference between the con-

tract price of the cotton and the price on the day of the breach."

(*a*) Under the facts of this case, the proper measure of damages is the actual loss on the resale of the cotton: Code, sec. 2940; Sedgwick on Meas. Dam., marg. p. 281, and notes; 3 Par. on Cont., 5th Ed., 155, 209.

4th. Verdict is contrary to the law and the evidence.

(*a*) Damages are given as compensation for the injury sustained: Code, sec. 2940; 3 Par. on Cont., 155.

(*b*) Where there are rules by which damages may be measured, the value of which may be ascertained by evidence, a new trial will be awarded if the finding be contrary to the evidence: 7 Ga., 204; 10 *Ibid.*, 37.

(*c*) Does the evidence sustain the verdict? 4 Ga., 193, 438, 439; 21 *Ibid.*, 69; 22 *Ibid.*, 103, 582; 24 *Ibid.*, 591; 34 *Ibid.*, 328.

5th. Verdict contrary to the charge of the Court as to measure of damages: 9 Ga., 408; 7 *Ibid.*, 204; 10 *Ibid.*, 37.

6th. Charge of the Court calculated to mislead the jury: 12 Ga., 100; 15 *Ibid.*, 258; 19 *Ibid.*, 335; 25 *Ibid.*, 184; 30 *Ibid.*, 241.

7th. Verdict is so small as to justify the inference of gross mistake or undue bias, hence Court should interfere: Code, sec. 2947; 41 Ga., 76.

W. U. Garrard, for defendants.

1st. If the charge was right as to "measure of damages," the hypothesis is reasonable that the jury, by this verdict, gave nominal damages, because the evidence furnishes them no *data* upon which to ground a verdict for real damages: Was the charge on this point correct? We say it was: Benjamin on Sales, 618; and this is measure of damages claimed in the declaration. As to the emphasis sought to be put upon the word "*themselves,*" by plaintiffs, reference to the charge in its entirety shows that the jury could have been deluded by no such distinction, and that no such exists therein. No plea

was filed against right of plaintiffs to sue herein as *"factors,"* it was, and is, admitted they could do so.

2d. Verdict should have been for defendants; there was no sale proven; there was no memorandum "signed by defendants," etc.: See Code, section 1950; Browne on Frauds, sections 365, 366, 367, 369; Smith on Mercantile Law, 618; Benjamin on Sales, 169, 188, 198; Williams on Personal Property, 36, 40; Phillips on Evidence, vol. 3, p. 352; Linton & Company *vs.* Williams, 25 Ga., 395.

3d. "Part performance" is relied on, however. This is a suit on many small contracts, so called. The seventy-two bales delivered could not bind as to the one hundred and fifty-three not delivered, because it was not a lumping sale; each "lot of cotton" stood for itself. This was a series of *cash* sales. As to the seventy-two bales delivered, the exception to the statute was not satisfied, because the *title* remained in the vendors: Code, sections 1589, 1590. "The cotton was not our property, nor was ownership of vendors given up:" Browne on Frauds, sections 316, 317, 321, 322, 325; Smith's Mercantile Law, 612, and cases cited; Phillips on Evidence, vol. 3, p. 366; Benjamin on Sales, 131, 134, 140, 141; 47 Barbour's Reports, 556; 42 *Ibid.*, 73.

4th. Equally upon the strength of the above authorities, section 1951 of Code does not apply; the "title" did not pass out of vendors, the plaintiffs.

5th. This case comes up by "writ of error," no motion for "new trial" having been made. Evidence cannot be considered: See Crim *vs.* Sellars, 37 Ga., 326; McCrary *vs.* Perry, 40 *Ibid.*, 256; Whitlock *vs.* Gains, 28 *Ibid.*, 26; Tate *vs.* State of Georgia, 48 *Ibid.*, 37. This Court cannot grant a new trial; it can affirm or reverse the judgment: See Code, section 218. It has granted a "new trial" on the other power stated in said section: See Wynn *vs.* Smith, 40 Ga., 458; but therein a new trial had been moved for.

TRIPPE, Judge.

1. Section 1950, Code, paragraphs 1 and 7, is but a reproduction of the 17th section of the statute of frauds, in so far as it applies to this case. The 7th paragraph of the section makes the contract binding when " the buyer shall accept part of the goods sold, and actually receive the same." In this case there were three distinct sales of cotton, to-wit: on the 11th, 12th and 14th days of April, 1873. That sold on the 11th, and part of what was sold on the 14th, were accepted by the buyers and actually received by them. The reply made to this is, that as the cotton was sold for cash, and as, by section 1593, Code, it "shall not be considered as the property of the buyer, or the ownership given up until the same shall be fully paid for, although it may have been delivered into the possession of the buyer," the conditions of the statute of frauds were not complied with, and plaintiffs cannot recover. It is not necessary to notice at large the point involved in this position. It might be sufficient to say that this is not an action for goods sold and delivered, when it might become necessary for the seller so to part with the dominion of the goods sold as to make them the property of the buyer, but it is a suit for damages for a breach of contract. Such an action may often be sustained and meet the demands of the statute, where one for goods sold and delivered could not be. But we do not think the section quoted (1593) has any such effect as is claimed for it. It was simply intended to protect the owner of cotton and other products against fraudulent purchasers; for the next section makes it penal for the purchaser to dispose of such commodities without paying for them. It surely, whilst passed for the benefit of the owner, could not have been meant to give power to a purchaser to buy, accept and receive such products and then refuse to execute the bargain by paying for them, on the ground that they were not his property, and when they were not his, merely because he had not paid for them. This guaranty or protection, secured by special statute to the owners of such articles, never was

designed to affect any rights they had as sellers, under section 1951; nor do we think it touches the construction to be given to that section. If the buyers accepted the cotton sold at any one or more of the sales, or part thereof, and actually received the same, they were bound by the contracts under which the receipts and acceptances were made, and were liable in damages for refusing to perform such contracts.

2. But if, under any of the contracts of sale, there was no memorandum, or in the language of section 1950, no "promise" was signed by the parties to be charged therewith, and no acceptance and actual receipt of the cotton, or part thereof, by them, and no earnest or part payment, the buyers were not bound by that contract. Plaintiffs claim that the "sale tickets" made out by themselves of the sale made on the 12th of April, were sufficient to meet the demand of the statute, although there was no acceptance and actual receipt of the whole or part of the cotton by defendants. It has been heretofore stated that the section 1950 of the Code, so far as it applies to this case, was but a reproduction of the 17th section of the statute of frauds. The latter requires "that *some note or memorandum in writing of the said bargain* be made and signed by the *parties* to be charged by such contract," etc. The former, in order to make the contract "binding on the promisor," provides that "*the promise* must be in writing, signed by the *party* to be charged therewith." But we do not determine that these differences between the two affect the construction to be given to them. As to the term "party" being used in one and "parties" in the other, which is also the case in the 4th and 17th sections of the statute of frauds, it has been often held that the difference in these two made no distinction in the construction to be given to both: Browne on Frauds, section 365, and cases cited; Broom's Commentary on the Common Law, 421. Nor do we pronounce whether the construction of the section in the Code is different from what it otherwise would be, on account of the change of the words "note or memorandum" to the word "promise." In the case before us there was neither note, memorandum, or

promise in writing, signed by the party sought to be charged. As to the "sale tickets" made out by the sellers and signed by them, although it might have been sufficient to bind the plaintiff, it was not binding on the buyers. Benjamin, in his work on Sales, page 174, says: "Under both sections (of the statute of frauds) it is well settled that the only signature required is that of the party *against* whom the contract is to be enforced. The contract, by the effect of the decisions, is good or not at the election of the party who has not signed." In support of this he cites, Allen *vs.* Bennett, 3 Taunt, 169; Thornton *vs.* Kempster, 5 Taunt, 786; Laythoarp *vs.* Bryant, 2 Bingham, (North Carolina,) 735. The same rule is stated in 1 Greenleaf's Evidence, section 268, which says: "Neither is it necessary * * * that both (parties) be *legally bound* to the performance (of the contract,) for the statute only requires it to be signed by the party to be charged therewith, that is by the defendant against whom the performance or damages are demanded." See, also, Clason *vs.* Bailey, 14 John, 434, where the question is fully discussed, and many authorities cited, recognizing that where one party signs the contract it may be good to charge him with the performance of it, when he could not enforce it against the other: Browne on Frauds, section 366; Western *vs.* Russell, 3 Vesey & Beame, 192; Hawkins *vs.* Holmes, 1 Peirre Williams, 770. Many other cases might be cited where an action has been maintained on a contract signed only by one of the parties. But I have not found one, unless it was brought against the party who did sign. In the case of Clason *vs.* Bailey, *supra*, the Chancellor, in pronouncing the opinion, said: "It appears to be settled that though the plaintiff has signed the agreement he never can enforce it against the party who has not signed it. The remedy in such case is not mutual. But notwithstanding this objection, it appears from the review of the cases that the point is too well settled to be now questioned." *Linton & Company vs. Williams*, 25 *Georgia*, 391; Douglass *vs.* Stears, 2 Nott & McCord, 207, were cases against the parties who signed, and so is every case which I have been able to find.

In sustaining the actions in such cases, expressions have fre-quently been used, implying that there was a mutual obliga-tion resting on the parties which each could enforce against the other, although but one may have signed the contract. But, as stated, I have seen no case where judgment has been given affirming a recovery had in an action brought by the one who signed, on the ground that both parties were bound because the plaintiff himself had made a memorandum and affixed his own signature.

3. Where cotton factors sell cotton consigned to them, they may, in their own names, recover the damages resulting from a breach of contract by the buyer, although they may be bound to pay the same, when recovered, to their consignors. They have a special property in the cotton. They have a lien on it for their commissions, which commissions attach on the very damages they may recover, and would be increased thereby. We did not understand this to be controverted.

4. The measure of damages in such cases is the difference between the contract price for the cotton and the value thereof on the day of the breach: Benjamin on Sales, 559, and the authorities there cited. In Barrow vs. Arnaud, 8 Queen's Bench, 604, the rule is stated to be "the difference between the contract and the market price of such goods at the time the contract is broken;" and the reason assigned for such a measure of damages is, "that the seller may take his goods into the market and obtain the current price for them."

5. The Court, in the charge to the jury, limited the plain-tiff's right of recovery "to the amount of damages actually sustained by themselves." This may have misled the jury, and probably did. As heretofore stated, although the plain-tiffs might be bound to pay over to the owners of the cotton whatever they recovered in the suit, less their commissions on the same, they yet were entitled to maintain the action for the whole amount of damages occurring from the breach of the contract. Their commissions would be but a small per cent-age of this—say two and a half per cent. That two and a half per cent., or the amount of the commissions, was the

Groover, Stubbs & Company *vs.* Warfield & Wayne.

real and actual damage to plaintiffs.  Counsel for plaintiffs claim that these commissions were just what the verdict was for.  We cannot say as to this; but as the jury did find for the plaintiffs on the main question, to-wit: that there was a breach of contract by the defendants, and as they were probably misled by this charge of the Court, we think there should be a new trial.  It might be added that the charge, in so far as it was stated that the "sale tickets" of the 14th of April, as it was not signed by the defendants, was not sufficient to take the case out of the statute of frauds, seemed to ignore the fact that part of the cotton sold that day had been delivered, and was accepted and actually received by the defendants.  If so, they were bound by the contract for the purchase that day made.

Judgment reversed.