| 86  129 |
| 187  370 |

## Maitland *versus* Martin.

1. If an agent in perfecting a sale for his principal acts strictly within the line of his duty, and in good faith, and without fault on his part in the management of the sale he incurs damages, they must be borne by the principal and not by the agent.

2. A broker, in Philadelphia, in 1872, purchased, for B., five South Carolina bonds, which B. allowed to remain in the broker's possesssion until 1875, when he gave him a direction to sell them. The broker sent them to his correspondent, in New York, who made the sale and returned a draft for the proceeds. Before the broker had paid over these proceeds he received intelligence, from his correspondent, that three of the bonds were among certain bonds which the legislature of South Carolina, in 1874, had repudiated, and which the New York Stock Exchange, by an order, had declared not a "good delivery" on a sale of regular South Carolina bonds. The correspondent purchased other bonds to replace the non-fundable ones, and the broker paid the sum so advanced, and then offered to return the three bonds and account for the proceeds of the two others sold. B. refused, and brought suit and sought to recover the whole amount of the proceeds of the original sale of the five bonds. *Held*, that B. could not recover, and if the broker, in effecting the sale of the bonds, acted strictly within the line of his duty and in good faith, and a loss was incurred, B., who was his principal, was alone liable. *Held*, further, that although by the failure of the broker to disclose his principal to his correspondent, he may have become personally liable to the latter, yet that did not bar the right of the broker to require his principal to make good the loss.

January 18th 1878.     Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term 1878, No. 102.

Assumpsit by Caroline Martin against Camille D'Invilliers and John J. Maitland, trading as C. D'Invilliers & Co., to recover the value of certain bonds purchased by said firm as brokers. D'Invilliers died after suit brought, and it was afterwards proceeded with against Maitland alone.

The facts are fully stated in the opinion of this court. At the trial, Pratt, J., charged the jury as follows: "The plaintiff, a sister of Mr. Martin, places money in the hands of defendants, as brokers. Mr. Martin, as agent for his sister, gave a written order to buy South Carolina bonds. He says April and October. Defendants say January and July. On written order April is erased and July substituted. Mr. Martin says that after the purchase he was informed by defendants that the purchase made on his order was of January and July bonds. He then objected, but was told that these were just as good as the others, and afterwards said nothing. There was no positive acceptance on his part further than acquiescence goes. The bonds were never delivered to Martin. You must judge whether Martin by his conduct allowed defendants to believe that he acquiesced.

"We find these bonds in the hands of the defendants as the property of the plaintiff.

[Maitland v. Martin.]

" In 1875 the defendants were directed to sell the bonds. An order was sent by defendants to a New York broker to sell. The following day the bonds were shipped. This was the 14th of May. [On the same day—the 14th—the defendants were advised by their New York correspondent that the bonds were sold, and a check was sent over for the amount, and was received by defendants. This was a completed transaction.]

" The purchaser found, upon seeing the bonds, that three of them were not marketable, and refused to· receive them. Defendants thereupon purchased other bonds and delivered them to the purchaser, leaving three of the bonds ordered by the plaintiff to be sold, on hand.

" At the time of this sale the defendants were agents for the plaintiff, in relation to these bonds. An authority to sell does not imply an authority to buy. An agent who exceeds his authority adopts the act as his own, and is no longer agent.

" [Plaintiff ordered her bonds sold at thirty-three, and they were sold at that price. If you believe this, then, as matter of law, D'Invilliers was responsible for rescinding the contract.] They thereby adopted the theory of the purchaser, accepted the return of the bonds, and purchased others to supply their place, and fill their contract. By this act they relieved the purchaser from liability to be sued upon his contract.

" [If defendants rescinded the contract and took back the bonds sold, and bought others to fill the contract, .without authority from the plaintiff, they adopted the loss as their own.]

" [If the defendants agreed to take these bonds back without the consent and authority of their principals, and substituted others purchased by them in lieu thereof, they accept these bonds as their own. The three bonds are in the hands of defendants as their property], and the measure of damages would be the amount realized from the sale, less their lawful commissions."

The verdict was for the plaintiff for $1784.54, and after the entry of judgment the defendant took this writ, alleging that the court .erred in the foregoing portions of the charge contained in brackets.

*George Bull* and *James H. Campbell*, for plaintiff in error.— The assumption of the court below that this was a completed transaction was clearly an error. To make it complete required a delivery of the bonds to the purchaser and his acceptance. The plaintiffs in error agreed to deliver marketable bonds, but were unable to fulfil their contract, because their principal could not produce such bonds. Clearly, they were not liable if they acted in good faith in endeavoring to effect a sale, but failed on account of a defect in the bonds: Stocking *v.* Sage, 1 Conn. 519; Andrews

[Maitland *v*. Martin.]

*v*. Kneeland, 6 Cowen 354; LeRoy *v*. Beard, 8 Howard 468; Courcier *v*. Ritter, 4 Wash. C. C. 549.

The act of the agent is the act of the principal, and in making the contract to sell bonds, as between principal and agent, it was simply the contract of the former. The contract here was to sell and deliver South Carolina bonds, which meant, as defined by the rule of the Stock Exchange, fundable bonds, or such bonds as were recognised by the authorities of South Carolina. It is plain, therefore, that Caroline Martin was bound to deliver fundable bonds. Three of the bonds held by her were non-fundable, and could not be delivered in fulfilment of the contract made. Under these circumstances, her agents were authorized to purchase other bonds to make the contract good: Story on Agency, sect. 227; Paley on Agency 197.

The authority of a broker to bind his principal is not in all cases confined to the power which the principal intended to confer on him. The interests of the mercantile world require that he should bind his principal within the limits of the authority with which he has been apparently clothed, in respect to the subject-matter of the sale: Andrews *v*. Kneeland, 6 Cowen 358; Long on Sales 233; Pickering *v*. Busk, 15 East 38.

The fact that C. D'Invilliers & Co. made the contract to sell in their own names, without disclosing the name of their principal, makes no difference as to the relative positions of principal and agent: Story on Agency, sect. 28. If a broker sells the goods of his principal in his own name, without special authority to do so, inasmuch as he exceeds his proper authority, the principal will have the same rights and remedies against the purchaser as if his name had been disclosed by the broker: Baring *v*. Corrie, 2 B. & Al. 137; Saladin *v*. Mitchell, 45 Ill. 79.

*Thomas J. Diehl*, for defendant in error.—It is an agent's imperative duty to give his principal timely notice of every fact or circumstance which may make it necessary for him to take measures for his security, and by omitting to apprise the plaintiff of the crisis, he took on himself all but the unavoidable losses that were incident to it: Devall *v*. Burbridge, 4 W. & S. 306.

If an agent exceed his authority, he thereby binds himself individually, but his principal is not bound: Layng *v*. Stewart, 1 W. & S. 222. It certainly was the duty of the defendant at all times to keep the plaintiff, his principal, apprised of his doings, and to give him notice within a reasonable time of all such acts and circumstances as were important to his interest, and if, by his neglect to do this, the plaintiff has suffered a loss, he is entitled to be indemnified by the defendant: Brown *v*. Arrott, 6 W. & S. 402.

Under the argument of the plaintiff in error, it was clearly the duty of the brokers to have given their principal, the plaintiff

[Maitland v. Martin.]

below, an opportunity to assert her rights against the purchaser by giving up the name, which it appears they had. What the brokers in fact did, was to rescind the contract after it had been fully executed, or, as they call it, cancel the sale; this without notice to their principal. Did they not by so doing exceed their authority so as to make the act their own, and themselves liable to their principals? Patterson v. Moore's Ex'rs, 10 Casey 69; Hampton v. Speckenagle, 9 S. & R. 212.

Mr. Justice MERCUR delivered the opinion of the court, May 6th 1878.

This action was brought by the defendant in error for money had and received for her use. The money sought to be recovered came into the hands of the plaintiffs in error under the following circumstances: In August 1873, being brokers in the city of Philadelphia, they purchased for the defendant in error five South Carolina bonds, of the nominal value of $1000 each. She left the bonds in their possession. They were sealed up in an envelope, her name endorsed thereon, and deposited in the safe of the plaintiffs in error in the "Fidelity." They thus remained until May 1875, when she instructed the plaintiffs in error to sell them at thirty-three per cent. There being no market in Philadelphia for them, on the 12th of May they directed their correspondents, Cecil, Stout & Thayer, brokers in New York, to sell them. By dispatch, on the 14th of May, they advised the plaintiffs in error that they had sold at the price named. Immediately thereafter the plaintiffs notified the defendant of the sale. On the same day the plaintiffs forwarded the bonds to their correspondents by express, and requested a draft to be remitted for net proceeds. On receipt of the bonds, Cecil, Stout & Thayer remitted the proceeds to plaintiffs in error on the 15th May. On the 17th May, and while the proceeds remained in the hands of the plaintiffs in error, they were notified by Cecil, Stout & Thayer that three of the bonds were not fundable, and not a good delivery at the price for which they had sold them; and, therefore, they had purchased others at the same price to supply the place of those not fundable, and held the plaintiffs in error for the sum thus advanced. On the same day the plaintiffs in error advised the defendant of the substance of this notice, and further requested her to consider the sale of 3000 of the bonds reported by them sold, as cancelled. They also directed Cecil, Stout & Thayer to return the three bonds not accepted, and draw on them for the sum paid. Thereupon Cecil, Stout & Thayer returned the bonds, and the plaintiffs in error paid them the sum which they had advanced.

The plaintiffs in error offered to return the three bonds to the defendant, and account for the proceeds of the two others; but she denies their right to hold her responsible for the money thus paid

[Maitland *v.* Martin.]

by them, and seeks to recover the whole sum agreed to be paid for the five bonds.

It appears, by the evidence, that about the 1st of June 1874, the treasurer of the state of South Carolina issued a notice that certain bonds of that state had been declared null and void by the legislature, and would not be recognised. Thereupon, June 2d 1874, the New York Stock Exchange made an order that the bonds embraced in said notice should not pass, as a good delivery, on a sale of regular "South Carolina bonds," after that date. Three of these bonds appear to have been repudiated by the legislature, and at the time of the sale, in May 1875, were not fundable, and as a consequence were almost worthless. Cecil, Stout & Thayer professed to sell "fundable bonds" only. They supposed all of the five to be of that class. The purchaser had a right to suppose he was buying such. Discovering that three of them were not of that kind, he refused to accept them. Cecil, Stout & Thayer thereupon replaced them with such bonds as filled the contract. If these facts be proved, they undoubtedly had a valid claim against the persons in whose behalf they agreed to make the sale. At the time the plaintiffs in error directed them to make the sale, they did not disclose the name of their principal; yet this in no manner changed the legal rights and liabilities between her and them. The specific bonds were her property. The plaintiffs were her agents to effect a sale. It was to be made for her benefit. The plaintiffs were bound to due care, prudence and diligence in the execution of the powers committed to them. These they appear to have exercised. They kept their principal informed of their action. The defendant is not shown to have sustained any damage by reason of any information being withheld from her. These bonds had depreciated while owned by her. If the plaintiffs in error, while acting as her agents in effecting the sale, without any fault on their part, became liable, she, and not they, must bear the loss.

The object to be effected was a sale of the bonds. The plaintiffs in error, as well as Cecil, Stout & Thayer, were acting as agents to reach that end. An agreement to sell fundable bonds, and a payment by the purchaser to one agent, and his transmission to another agent, did not necessarily complete the transaction.

It required a delivery, or a readiness to deliver the bonds, of the kind sold, according to the contract. Anything less than that left the transaction incomplete, unless further fulfilment was waived.

In fully perfecting a sale the plaintiffs in error were strictly in the line of their duty. We discover nothing affecting their good faith. If, then, without fault on their part in the honest management of the business of the defendant, they incurred damages, those damages must be borne by her and not by them : Stocking *v.* Sage, 1 Conn. 519; D'Arcy *v.* Lyle, 5 Binn. 441; Whart. on Agents, sect. 316.

[Maitland *v.* Martin.]

If the plaintiffs in error in good faith carried out the contract made with the purchaser, they did not thereby adopt the loss as their own and relieve the defendant from her legal obligation to reimburse them. Although they took back the bonds, without the express consent and authority of the defendant, yet they did not thereby necessarily accept them as their own. If the facts are found to be as stated, the purchaser was justified in refusing to accept the bonds. If so justified, it was clearly within the general scope and authority of the plaintiffs in error, as her agents, to fulfil the contract, and their acts, in contemplation of law, became her acts. Although, by failing to disclose their principal, the plaintiffs in error may have become personally liable to Cecil, Stout & Thayer, yet that does not bar the right of the plaintiffs in error to require the defendant to make their loss good. It therefore follows that many portions of the charge were too unfavorable to the plaintiffs in error, and the assignments are substantially sustained.

Judgment reversed and a *venire facias de novo* awarded.