# TUSTIN FRUIT ASSOCIATION v. EARL FRUIT CO.

## L. A. No. 330; June 27, 1898.

### 53 Pac. 693.

**Agency—When Agent may Sue in Own Name.**—Where an agent contracts directly as a principal, he may sue on the contract in his own name, regardless of whether the other party knew of his agency.

**Factors.**—Plaintiff Sued on a Contract by Which Defendant agreed to sell plaintiff's fruit, and guarantee sales, alleging that plaintiff "sold and delivered" at a certain place a stated amount of fruit, which was picked, packed and loaded "by plaintiff under the inspection and approval of the defendant, and was received, accepted, and receipted for by defendant at the prices mutually agreed upon by plaintiff and defendant for said fruit," and setting forth the amount unpaid from defendant to plaintiff for said fruit. Held, that the allegation, taken in connection with the contract, showed a sale by defendant, as a factor, for plaintiff, for which it was liable under its contract of guaranty.

**Factors.**—A Fruit Company Agreed With an Association not to handle the fruit of those who were not members of the association,

without its consent. The association, in an action against the company, alleged that under that provision in the contract the company had agreed to pay plaintiff a certain price for each box belonging to a certain fruit-raiser, stating the number thereof; that defendant had begun to buy or ship the same; and that plaintiff was entitled to recover of defendant, "by reason of the agreement relating to the handling" of said fruit, a stated amount. Held, that the allegation was sufficient against a general demurrer, though it was not alleged that such fruit-raiser was not a member of the association, or that defendant in fact "handled" his crop.

Corporation—Proof of Incorporation.—Where the Contract Sued on Describes plaintiff as a corporation, no further proof of its incorporation is necessary.

Association.—An Agreement by the Stockholders of an Association which recited that, "being desirous of having my oranges handled in the manner set forth in the by-laws" of the association, they individually appointed the association their agent, may be introduced in evidence, without the by-laws referred to, in an action by the association on a contract between it and a fruit company for the sale of fruit.

Association—By-laws as Evidence.—Under Code of Civil Procedure, section 1854, providing that "when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing, which is necessary to make it understood, may also be given in evidence," defendant may introduce plaintiff's by-laws, where plaintiff introduced an agreement between its stockholders and plaintiff which stated that, "being desirous of having my oranges handled in the manner set forth in the by-laws" of plaintiff, they individually appointed plaintiff their agent.

Factors.—Under Civil Code, Section 2029, providing that "a factor who charges his principal with a guaranty commission upon a sale, thereby assumes absolutely to pay the price when it falls due, as if it were a debt of his own," and section 1794, providing that the obligation of a factor who undertakes, for a commission, to sell merchandise and guarantee the sale is original, and need not be in writing, a factor selling under a guaranty of sales becomes liable absolutely for the price, and a finding that it was the purchaser is immaterial error.

Factors.—An Association Contracted With a Fruit Company to deliver No. 1 fruit f. o. b., and the company was to guarantee the sale. The association also agreed to deliver to the company No. 2 fruit, f. o. b., the sale of which the company did not guarantee. The fruit was picked, graded, culled and packed under the supervision of the company's agent, who receipted for it as "Sold f. o. b."; and the company's president testified that, at the time of shipment, account sales were rendered the association by the company on the assumption that the fruit was No. 1 except where otherwise stated. Held, that a

certain consignment, not shown to be within the exception, was accepted by the company as No. 1 fruit.

Factors.—A Fruit Company Contracted With an Association to take from it No. 1 fruit, "guaranteeing original sales and collections; it being understood that all responsibility" of the association "ceases when said fruit is accepted" by the company on board cars. Held, that the company, having accepted fruit as No. 1 without any representations of the association touching its quality, was bound to account for that quality of fruit, although, through a latent defect, the fruit proved to be inferior.

Sales.—Where a Buyer Refuses to Accept Perishable property under a contract, it is the right of the seller to sell it forthwith, so as to reduce his damages.

Sales—Damages Where Buyer Refuses to Take Fruit.—Civil Code, section 3353, provides that in estimating damages the value of property to a seller is the price which he could have obtained in the market nearest to the place where the buyer should have accepted it, as soon after the breach of the contract as the buyer could, with reasonable diligence, have effected a resale. Held, that the value to a seller of fruit which a buyer refused to take is its value in the condition it was in when the owner could have sold it after the repudiation of the contract.[1]

APPEAL from Superior Court, Orange County.

Action by the Tustin Fruit Association against the Earl Fruit Company. From a judgment giving plaintiff partial relief and from orders denying a new trial both parties appeal. Affirmed.

Victor Montgomery and J. D. Pope for plaintiff; M. L. Graff, Guy C. Earl and J. G. Scarborough for defendant.

BRITT, C.—There are cross-appeals in this case. The plaintiff's action is founded on a written contract executed by and between the parties now litigant, of which the more material portions are as follows:

"This agreement, made and entered into at Tustin this eighteenth day of December, 1894, in duplicate, by and

---

[1] Cited in Piowaty v. Sheldon, 167 Mich. 227, 132 N. W. 520, where, in a case somewhat similar, the court says: "We are unable to agree with counsel for the plaintiff that the defendant was not entitled to charge the plaintiff with the expenses in connection with the storage and insurance of the apples in question, if entitled to recover at all," and denies there being anything in the cited case counter to this proposition.

between the Tustin Fruit Association, a corporation, of Tustin, Orange county, California, party of the first part, and the Earl Fruit Company, a corporation, of Los Angeles, California, party of the second part, witnesseth: That the party of the first part hereby places all oranges under its control, or that may come under its control during the season of 1894–95, in the hands of the party of the second part, to market for their [its] account, on the terms and conditions hereinafter stated. Party of the second part to sell all No. 1 fruit of regular sizes, together with as many off sizes as are included in the standard car, as established by the Southern California fruit exchanges, f. o. b. Tustin, guaranteeing original sales and collections; it being understood that all responsibility of the party of the first part ceases when said fruit is accepted by the party of the second part on board cars at Tustin. Party of the second part to make best disposition possible of No. 2 fruit, and any accumulation of off sizes, on which it is understood no guaranty is made. The party of the first part agreeing to allow party of the second part a commission of twelve and one-half per cent of the gross price for which the fruit is sold, f. o. b. Party of the second part to make cash payment for all guaranteed sales as fast as such shipments are made, or not later than the week after shipment, and cash settlement for all other sales as fast as account sales are rendered. Selling prices are to be mutually agreed upon Wednesday of each week, which prices will rule for the following week; it being understood and agreed that such selling price shall at no time exceed the prices which the Southern California fruit exchanges are selling equal grades of fruit during the same period. It is further understood and agreed that all orders taken, to not exceed twelve cars per week after March 13th, or more if accepted by the party of the first part, shall be protected and filled by the party of the first part. The party of the second part to furnish orders for at least (average) twelve carloads per week, when requested by party of the first part, after March 15th. Party of the second part to dispose of all seedlings and navels, hereby contracted, on or before May 15, 1895, and all other varieties of oranges on or before July 1, 1895, unless otherwise mutually agreed. Picking, grading, culling and packing of fruit and loading of cars to be done by the party of the first part, and subject to the approval and inspection of the party of the second part.

Party of the first part to pick and grade the fruit into grades substantially equivalent to the grades as determined and established by the Southern California fruit exchanges. Choice and standard grades of fruit, more particularly described, are as follows: Choice grade is to be bright, clean, juicy, and free from smut, scale, frost and culls. 'Standard' grade, it is understood, will be somewhat smutty and scaly, but juicy and free from frost and culls. Party of the second part further agrees not to handle the oranges of any grower of Tustin or Santa Ana who is not a member of the Tustin Fruit Association, except with the consent of the party of the first part.''

In its complaint the plaintiff charged several breaches: First, that defendant failed to pay a balance of $4,059.78 due for thirteen carloads of oranges received by it between March 3, and March 15, 1895; second, that defendant refused to accept twelve carloads of oranges at prices agreed on by the parties for the week following March 13, 1895, to plaintiff's damage in the sum of $4,600; third, that defendant similarly refused to accept twelve carloads of oranges for the week following March 20, 1895, to plaintiff's damage in the sum of $4,600; fourth, that after said March 20th defendant refused to agree with plaintiff on the prices of oranges, or to receive any fruit, or to furnish any order therefor, to plaintiff's damage in the sum of $25,000; and, fifth, that defendant handled the crop of oranges belonging to one Wall, within the prohibition of the last clause of said contract, and failed to pay plaintiff for consent given thereto as it (defendant) had promised. A demurrer to the complaint interposed by defendant was overruled.

By its answer the defendant admitted the execution of the contract alleged, but denied most of the other allegations of the complaint. It also pleaded, at considerable length, several counterclaims: Firstly, that defendant, as agent of plaintiff, after the execution of said contract sold to various of its (defendant's) customers in the eastern market fifty-eight carloads of oranges as No. 1 fruit; that the same proved to be not No. 1 fruit, in that it developed a lack of good shipping and carrying qualities, and so arrived at the several places of destination of the cars at the east in bad condition, and that defendant sustained a loss of $3,110.54, in the excess of advances it made to plaintiff thereon above the sum realized for the fruit. The second counterclaim was founded on the

same transactions as those described in the first, and claimed general damages in the sum of $50,000. Some particulars of the pleading will be stated when we come to consider the demurrer thereto, which was sustained by the court. As the ground of the third counterclaim, defendant set up a contract between the parties of date March 9, 1894, for marketing the oranges of plaintiff for the reason then current. Such contract was quite similar in its main features to that of December 18, 1894, on which plaintiff sues. The classification of fruit in the earlier contract, however, was as choice and standard only; and defendant averred that thereunder it received and handled for plaintiff between March 10, 1894, and July 13, 1894, one hundred and forty-seven carloads of oranges, believing the same to be choice, as defined in that contract; and, for reasons similar to those alleged in said first counterclaim—the fruit proving to not be choice, and arriving in bad order in the eastern market—defendant alleged that it sustained a loss, in its advances of purchase price to plaintiff above returns from the fruit, amounting to $12,500.53. The fourth counterclaim, to which the court sustained a demurrer, bore a like relation to the foregoing third counterclaim that the second bore to the first, and alleged damage in the sum of $50,000 for detriment incidental to defendant's performance of the said contract of March 9, 1894. The fifth counterclaim was for a balance of $1,002.26 for goods, etc., sold by defendant to plaintiff about March 18, 1895.

After trial, the court made findings from which it concluded that defendant is liable to plaintiff in the sum of $4,059.78 for thirteen carloads of oranges received by defendant under the contract of December 18, 1894, as alleged in the complaint (defendant's commissions, and a credit allowed by plaintiff for the value of the merchandise mentioned in the fifth counterclaim, having been first deducted); that defendant is further liable to plaintiff in the sum of $77 on account of oranges handled by defendant for said Wall; that for the several failures of defendant to receive oranges from plaintiff after March 15, 1895, pursuant to the contract of December 18, 1894, defendant is liable in nominal damages only, fixed at three dollars; and that defendant should take nothing by reason of its counterclaims. Judgment was entered accordingly. Each party moved for a new trial, and their

respective motions were denied. We shall consider first the appeal of the defendant.

1. It is contended that plaintiff is not the real party interested in the relief it demands, and for that reason ought not to be permitted to maintain the action. This objection is taken on certain allegations of the complaint which, it is claimed, show that plaintiff was not the owner of the oranges that were the subject of the contract of December 18, 1894; that the stockholders of plaintiff, in their respective individual capacities, owned the various crops of oranges making up the aggregate with which plaintiff assumed to deal; and that plaintiff was merely their agent to market the same. Admitting that all these things appear from the complaint, it is yet not perceived why plaintiff may not sue. The defendant contracted directly with plaintiff as a principal, and in such a case the law allows the agent treated as a principal to sue in his own name on the contract, whether the fact of agency was or was not known to the other contracting party: 1 Chit. Pl. 8; Pom. Code Rem., secs. 141, 177; Mechem, Ag., sec. 755; Phillips v. Henshaw, 5 Cal. 509; Du Bois v. Perkins, 21 Or. 189, 27 Pac. 1044. It was averred in the complaint that plaintiff "sold and delivered on board cars at Tustin thirteen carloads of No. 1 fruit, . . . . all of which fruit was picked, graded, culled, packed and loaded on said cars by plaintiff under the inspection and approval of the defendant, and was received, accepted and receipted for by defendant at the prices mutually agreed upon by plaintiff and defendant for said fruit''; that at such prices, less defendant's commissions, the amount unpaid from defendant to plaintiff for said thirteen carloads is the sum of $4,059.78, etc. It is objected that these allegations are defective, in that, while alleging a sale by plaintiff, they do not show a purchase by defendant; that the contract provides that defendant shall sell the fruit, guaranteeing sales thereof; and that to aver that plaintiff sold the goods was to allege a violation of the contract by plaintiff. The criticism is not well founded. Understood in connection with the provisions of the contract, the averment showed a sale made through the instrumentality of defendant, as factor for the plaintiff, under such conditions that defendant's liability for the price, less its commissions, had attached pursuant to its contract of guaranty. So understood, it was not incorrect to say that plaintiff sold the goods.

Respecting Wall's crop of oranges, plaintiff alleged, in substance, that in virtue of the last clause of the contract the defendant agreed to pay plaintiff, in consideration of its consent, five cents for each box of Wall's crop—stated at ten thousand boxes—that defendant bought or shipped; that defendant "has commenced to buy or ship the same for said Wall, and that plaintiff is entitled to have and recover of and from the defendant, by reason of the agreement relating to the handling of said Wall's crop of oranges, the sum of five hundred dollars"; also, that defendant committed a breach of its contract, in not settling with plaintiff for the oranges shipped from the orchard of Wall at the rate of five cents per box. To these averments of the complaint defendant objects, mainly, that they fail to show that Wall was not a member of the Tustin Fruit Association, and also fail to show that defendant has in fact "handled" his crop. The allegations under view lack the precision which should characterize good pleading, but they show that defendant shipped—and thus handled—some of Wall's oranges, and that for plaintiff's consent to this proceeding defendant promised, "in virtue of the last clause of said contract," to pay a stated sum. It is to be inferred, therefore, that Wall was not a member of the plaintiff's association, for it was crops of outsiders only that defendant was forbidden to handle without plaintiff's consent. Hence the statement of a cause of action as to Wall's oranges must be held sufficient against a general demurrer, which is the only form taken by defendant's objections in the record: Amestoy v. Transit Co., 95 Cal. 311, 30 Pac. 550; Alexander v. McDow, 108 Cal. 29, 41 Pac. 24.

2. The court found that plaintiff is a corporation, and defendant claims that there was no evidence to sustain the finding. The contract between the parties described the plaintiff as a corporation, and no further proof on that point was necessary: Fresno Canal & Irr. Co. v. Warner, 72 Cal. 379, 14 Pac. 37.

It is urged that there was no evidence to support a certain finding of the court to the effect that prior to the contract of December 18, 1894, the stockholders of plaintiff, for the purpose of marketing their several crops of oranges, sold and conveyed to plaintiff, in trust for themselves, their, and each of their, entire crops, etc. We see no materiality in the finding, in view of other facts found or admitted. It sufficiently

appears that plaintiff had control of the oranges concerning which it contracted for the purpose of marketing the same. If the stockholders were making demands on defendant similar to those on which plaintiff sues, there might be ground for inquiring into their relations with plaintiff; but this is not shown, and defendant has no concern in the nature of the plaintiff's title to the fruit—whether it was that of full legal ownership, or the qualified interest of an agent. Upon this point, see the authorities above cited on the question of plaintiff's right to maintain the action; also, Lumley v. Corbett, 18 Cal. 494; Groover v. Warfield, 50 Ga. 644.

Here may be noticed the objection to the admission in evidence of the written agreement signed by plaintiff's stockholders, and entitled, "Contract for Marketing Oranges." Such instrument contained the following preface: "Being desirous of having my oranges handled in the manner set forth in the by-laws of the Tustin Fruit Association, [I] do for such purpose hereby constitute and appoint the Tustin Fruit Association, a corporation, my sole agent," etc. This introduction was followed by other matter showing the purpose of the individuals signing the document that plaintiff should market their oranges, and pay to them, pro rata, the net proceeds of sales thereof. The special objection urged is that the document was not accompanied by the by-laws to which it referred. Assuming (what is by no means clear to us) that the instrument was any essential part of plaintiff's proofs, we yet think the objection was not well taken. We agree that no part of a document should be wrenched from its context, and received as a disjointed member of what is properly an indivisible unit of evidence. But here the paper offered by plaintiff was no such fragment. It seemed to be complete in itself, so far as regards authority to sell the subscribers' fruit, and contained no intimation that the by-laws varied, or might vary, its import; for, in terms, it purported to conform to the by-laws. The effect of the reference to the by-laws was to make them admissible, had defendant chosen to offer the same, but not to render them the inseparable accessory of the paper containing the reference: Code Civ. Proc., sec. 1854; Toohey v. Harding, 1 Fed. 174, 177, 4 Hughes, 253; note to Rouse v. Whited, 82 Am. Dec. 345, and cases cited.

The court found that between March 3 and March 15, 1895, "plaintiff sold and delivered to defendant, on board cars, thirteen carloads of No. 1 fruit; the same being oranges," etc. The finding of a sale from plaintiff to defendant (if such is the proper import of this language) was both outside the issues made by the pleadings, and contrary to the evidence, but it does not follow that the judgment should fall. It appeared clearly enough from the findings that plaintiff sold and defendant received the goods pursuant to the guaranty of sales in the contract of December 18, 1894. Defendant was therefore liable absolutely for the price when it became due, and the finding that it was in fact the purchaser is of no consequence: Civ. Code, secs. 2029, 2794, subd. 4; Mechem, Ag., sec. 1014.

It is strongly insisted that the finding to the effect that said thirteen carloads of oranges consisted of No. 1 fruit is without support in the evidence. There was evidence that all the fruit received by defendant under the contract, including said thirteen carloads, was picked, graded, culled and packed under the direct supervision of defendant's agent, as allowed by the terms of the contract. It was in testimony that such agent went into the orchards, and selected the fruit to be picked. He decided what fruit should be accepted by defendant, and what rejected, and when the cars were packed he receipted for them. As to each of the said thirteen cars his receipt showed that the fruit was "Sold, f. o. b." Now, we agree with defendant that to admit a sale of fruit, f. o. b., did not necessarily admit it to be No. 1 fruit; for although the No. 1 fruit was by the terms of the contract to be sold f. o. b., and thereupon fell within the scope of defendant's guaranty, yet No. 2 fruit, sales of which were not within the guaranty, might also be sold f. o. b.; but a sale f. o. b. was evidently a sale for shipment, and the defendant's president testified that "the general course of business was that, at the time of shipment of all these various cars of fruit, account sales were rendered by defendant to plaintiff upon the assumption that the oranges were No. 1 fruit, and of good keeping quality, except where especially otherwise stated," etc. None of said thirteen carloads were shown to have been within the exception mentioned by the president. Considering his statement in connection with the evidence of the supervision exercised by defendant in the matter of grading

and culling the fruit, it is plain that defendant accepted the said cars of oranges as No. 1 fruit. For reasons presently to appear, this admission was conclusive, and fully justified the finding.

3. As stated above, the evidence tended to show that the picking, grading, culling and packing of the oranges were done under defendant's supervision. There was evidence that the fruit which was packed as No. 1 had the appearance of being No. 1, and was accepted by defendant accordingly. It appears that the terms "choice" and "standard," employed in the contract, applied to both No. 1 and No. 2 oranges; that is, there was choice and standard No. 1 fruit, and choice and standard No. 2. No question was made whether the grades of the oranges as packed corresponded substantially "to the grades as determined and established by the Southern California fruit exchanges," in the language of the contract. But defendant made various offers of evidence having the general purpose to show that a large part of the oranges received by defendant from plaintiff arrived in the eastern markets in bad order, and that this was because of a latent defect in the fruit, viz., "that they lacked the inherent quality necessary to make them No. 1 fruit, having no carrying or good keeping quality." It was stated that not even by cutting an orange and examining its interior could it be determined whether it possessed "good keeping qualities," and defendant sought to prove that this could only be ascertained by its actual journey to the eastern markets. The court refused to consider such evidence, and also evidence of various other matters alleged in defendant's first and third counterclaims, except upon condition that defendant would show that it was prevented from inspecting the fruit prior to shipment, which condition, defendant admitted, it could not fulfill. It will be observed that defendant's offer of evidence was not to define No. 1 oranges as those only which arrived at the east in good condition, but it was, in effect, that oranges, in order to grade as No. 1, must possess such "keeping and carrying qualities" at the point of shipment as will prevent deterioration from inherent causes in course of transportation to the east. Defendant urges in support of the offer that by the contract plaintiff warranted that No. 1 fruit, to which defendant's guaranty of sale applied, had no latent defect which would prevent its arrival at the eastern

markets in sound and merchantable condition; that such a warranty was implied, whether the defendant be treated as a purchaser of the goods, or as a factor of the plaintiff for marketing the same. In the latter phase of the question, it is claimed that plaintiff is bound to indemnify defendant for losses incurred by it as plaintiff's agent in disposing of the fruit. In considering the matter, we may assume, in accordance with defendant's contention, that plaintiff knew the goods were sold for shipment to eastern markets, though there is nothing indicative of such a purpose in the contract. It is true, as defendant says, that any person selling or agreeing to sell goods of a specified designation or description thereby warrants that they shall be of the quality indicated by such designation or description, and it may well be that one promising to supply to his agent or factor goods for sale to others should be held bound by the same principle. But, by the contract here, plaintiff represented no oranges to be either No. 1 or No. 2—either choice or standard. Whether, and to what extent, if at all, they fell within those designations, were matters for defendant's discrimination, to be reasonably exercised at the proper time, viz., when the oranges, pursuant to defendant's order, were to be picked, packed, accepted and shipped. Then they were open to defendant's determination whether they were properly graded and culled, and its duty to accept or reject arose. Defendant made its determination when it accepted the several carloads of goods, and plaintiff's responsibility thereupon ended, by the express provision of the contract. Defendant urges that this provision meant only responsibility for the safekeeping and carriage of the fruit, and collection of the purchase money from eastern customers. We think that construction too narrow. These exemptions from responsibility are included in other and more specific provisions of the contract. Thus, by its guaranty of original sales and collections, and its agreement to make cash payment for all guaranteed sales, the defendant was clearly bound for the prices at which the oranges were sold f. o. b., whether they ever reached their destination or not, and whether defendant ever collected from its eastern customers or not. The stipulation for immediate payment apparently looked to a closed and completed transaction between the parties as to every carload of fruit sold under the guaranty. Both the contract, and the conduct of the parties under it, show with reasonable

certainty that defendant depended on its own skill and judgment to procure what it wanted; and there is no ground for saying that a warranty from plaintiff, surviving acceptance by defendant, accompanied the goods. The point is illustrated by the case of a sale of a ship's bowsprit, which the buyers had the opportunity to inspect, and which appeared at the time of delivery to be perfectly sound. After some use, it was found to be rotten. There was no fraud. Held, that the seller was not liable for the subsequent failure, and was entitled to recover the apparent value at the time of delivery: Bluett v. Osborne, 1 Starkie, 384. To similar effect, Moore v. McKinlay, 5 Cal. 471; Parkinson v. Lee, 2 East, 314; and see Bartlett v. Hoppock, 34 N. Y. 118, 88 Am. Dec. 428; Benj. Sales, 6th ed., by Bennett, p. 646, and cases cited; Tied. Sales, sec. 187, p. 273, and cases cited. Defendant having accepted the oranges as No. 1 fruit, relying on its own judgment, it is very clear, we think, that no warranty of quality was implied, even though there were latent defects in the goods, undiscoverable by the closest examination. We conclude that the court rightly refused to consider defendant's offers of evidence to support its first and third counterclaims. We have carefully considered the various cases relied on by defendant in argument (Ruiz v. Norton, 4 Cal. 355, 60 Am. Dec. 618; Polhemus v. Heiman, 45 Cal. 573; Earl Fruit Co. v. Curtis, 116 Cal. 632, 48 Pac. 793; Long v. Armsby, 43 Mo. App. 253; Gould v. Stein, 149 Mass. 570, 14 Am. St. Rep. 455, 5 L. R. A. 213, 22 N. E. 47; Maitland v. Martin, 86 Pa. 120; English v. Commission Co., 57 Fed. 451, 6 C. C. A. 416, and others), and are of opinion that they teach no doctrine at variance with the result we have reached.

4. The question raised on the exclusion of evidence to support the first and third counterclaims does not differ much from that respecting the demurrer to the second counterclaim. Counsel have discussed them together. The construction of the contract, as we find it, is determinative of both. In said counterclaim it was averred that the fifty-eight carloads of fruit, delivered by plaintiff under the contract of December, 1894, were "picked, graded, culled and packed, and shipped without the approval or inspection of the defendant." This averment was contrary to the evidence at the trial, but for the purposes of the demurrer we accept it as true. It was,

however, further alleged that defendant sold to sundry of its customers, f. o. b., the said fifty-eight cars of oranges for shipment to the eastern market "as No. 1 fruit"; and from this and other allegations of the same pleading it is clearly inferable that defendant accepted the oranges from plaintiff as of that grade, and nothing is alleged to rebut the inference. Since, therefore, it was not shown, in addition to the alleged fact of the grading, culling, etc., of the oranges without defendant's inspection, that plaintiff was in some manner responsible for the failure of defendant to supervise those processes, the counterclaim makes a case of voluntary acceptance of the fruit by defendant without the inspection which, by the terms of the contract, it was its right and duty to make. Of course, then, in the absence of some fraud of plaintiff (which is not charged), the consequences of acceptance must follow as declared by the contract, viz., that the responsibility of plaintiff thereupon ceased: Moore v. McKinley, 5 Cal. 471. We need not repeat the considerations which have been already advanced on the effect of acceptance. It is not contended that the fourth counterclaim is, as a pleading, on a footing materially different from that of the second. What is said above suffices for the disposition of the demurrer to both of them. In our opinion, it was rightly sustained.

5. As to the appeal of plaintiff: Since the court found that defendant violated the contract, in refusing to agree with plaintiff on prices of oranges after March 15, 1895, and in refusing to accept any fruit after that date, the plaintiff's only ground for appeal is on the measure of damages. The court held that the recovery for those breaches should be for nominal amounts only. Both sides assume that the rule of damages is furnished by the following provisions of section 3311 of the Civil Code: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be: . . . . (2) If the property has not been resold in the manner prescribed by section thirty hundred and forty-nine, the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof if the buyer had accepted it." There was evidence tending to show that many thousands of

boxes of oranges were refused by defendant after said March 15, 1895, because plaintiff would not agree to assume the risk of deterioration thereof in transportation, according to defendant's construction of the contract, but also that plaintiff might have sold the same to others at prices equal to those defendant should have agreed on pursuant to the contract; that plaintiff did not avail itself of the opportunity to sell elsewhere, and that a large part of the total crop went to waste. On April 23, 1895, defendant sent a letter to plaintiff, in which, after proposing certain prices for oranges, defendant proceeded: "We insist upon the construction of the contract as heretofore contended for by us, and the above prices are made upon the basis of such construction. We hereby demand of you a compliance with the terms of the contract, as agreed upon between us, and will hold you responsible for any failure on your part to carry out the same." It is the contention of plaintiff that under said section 3311 the fruit lost as stated was of no value, and that it was entitled, therefore, to recover of defendant the full market prices for the same. It insists that this was more especially true of oranges lost after the date of said letter. Defendant maintains, on the contrary, that it was the duty of plaintiff to sell the oranges, when it had opportunity, to others, and not allow them to go to waste. Defendant's letter of April 23d was no more than an accentuation of its refusal to abide by the contract. True, it insisted on plaintiff's compliance with the contract, but it insisted, also, that the contract with which compliance was demanded should be something different from that which the parties had made—thus proposing a new term, and consequently a new engagement. Upon defendant's refusal to proceed further under the contract, the plaintiff was at liberty to sell the oranges to any person: Rayfield v. Van Meter, 120 Cal. 416, 52 Pac. 666. The goods were perishable, and we think it was plaintiff's right—perhaps its duty—to sell them forthwith, and in this manner reduce its damage: Hill v. McKay, 94 Cal. 5, 15, 29 Pac. 406. In any view, the value of the oranges to plaintiff, after defendant's repudiation of the contract, was not that of fruit gone to decay, but of the fruit in the condition it was when plaintiff could have sold it: Civ. Code, sec. 3353. In our opinion the judgment and order denying the motions for new trial should be affirmed.

We concur: Belcher, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order denying the motions for new trial are affirmed.