DICKINSON (FUZZARD WADDING MANUF'G CO. v.).  See Case No. 5,165.

DICKINSON (UNITED STATES v.).  See Case No. 14,958.

## Case No. 3,898.

### The DICK KEYS.

[1 Biss. 408.] [1]

Circuit Court, S. D. Ohio.  Oct., 1863. [2]

BARGES SUBJECT TO RULES OF NAVIGATION.

1. The use of barges having been found indispensable to a profitable navigation of the Ohio and Mississippi rivers in certain stages of the water, they are subject to the rules of navigation.

[Cited in The Murphy Tugs, 28 Fed. 431.]

2. When the articles transported are the same, governed by the same transporting power, whether steam, wind, or the natural forces of the current, the rules of navigation apply respectively to the modes used.

3. Goods, whether conveyed in the body of a steamboat or in a barge attached thereto, are subject to the same guaranties and protection There is nothing in the addition of a barge connected with a steamboat which changes the character of transportation.

[Cited in The Ida Meyer, 31 Fed. 89.]

4. A contract for the use of a barge at a stipulated rate, is cognizable in admiralty, and a libel may be maintained against the steamboat using it.

[Cited in The Florence, Case No. 4,880.]

5. The parties having intended to bind the steamer, the court will not restrict the meaning of the words used in the contract, as they tend to the advancement of commerce.

Appeal from district court of the United States for the southern district of Ohio.

In admiralty.  These were cross actions brought in the admiralty court, which, by the order of that court, were consolidated.

The libellants, [John] Scott & [John A.] Duble, allege that they are the owners of the steamboat Yorktown No. 2, and of the barge No. 2, which, on the 2d of December, 1854, were lying at the port of Cincinnati, in the

district aforesaid, and that by the usages of navigation on the Ohio and Mississippi rivers, barges are used by steamboats, as appurtenant thereto, for towing up and down said rivers, in the transportation of freight, and also for lightering over the bars in said rivers, at a low stage of water. That the steamboat Dick Keys, on the second of December, 1854, was a vessel of more than twenty-two tons burden, enrolled, &c., and was employed with barges on the same rivers, between Cincinnati and New Orleans, and that [John C.] Riley, as master of the steamboat Dick Keys, and on behalf of said steamboat, did, by contract in writing, obligate himself and said boat, to pay to libellants twenty dollars per day for the use of the said barge, commencing on the second of December, 1854, and continuing until said Riley, as master, should deliver to the libellants either of the two barges, Damon or Pythias, which were owned by the steamboat Dick Keys, in thorough repair for business, and that after delivery the steamboat Yorktown No. 2, and the steamboat Dick Keys, should have the use of each other's barges until such time as they could meet and exchange them without injury or loss to either party; and should the libellants not make use of the barge belonging to the steamboat Dick Keys, a fair compensation should be paid by the Yorktown No. 2, until it should be returned to the libellants in as good order as when received. That on the day aforesaid, the said Riley, as master, took possession of the Yorktown barge No. 2, under the contract, and used the same until after the thirty-first of December, 1854, on which day the barge Damon was delivered to the libellants. And it is claimed under the contract, that the sum of five hundred and eighty dollars are due under the contract by the steamboat Dick Keys, her master and owners. The district court allowed a small set-off against the claim of libellants, and entered a decree in their favor for the sum of $556, with interest thereon from time of demand.  [Case No. 12,528.]

Mills & Hoadly, for libellants.

Lincoln, Smith & Warnock, for respondent.

McLEAN, Circuit Justice.  It is contended that this is not a maritime contract, or one of which a court in admiralty can take jurisdiction.

This is admitted to be a proceeding in rem, in which the steamer Dick Keys is sought to be made responsible, on the ground of a maritime lien.  I am not aware that a question similar to this has at any time been raised.  Had the contract been made for the mere towage of one or more barges, for hire, it could not be considered as a maritime contract.  But this was not the nature or effect of the contract.

In certain stages of the water in the Ohio and Mississippi rivers, barges have been found indispensable to a profitable naviga-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 12,528.]

tion.. It is sometimes necessary to lighten the steamboat; by placing the heaviest articles in barges. These are so connected with the boat and with its transportation, as to require but one agency. The propelling power is the same, and the rules of navigation apply. Some additional care may be required in the passage of boats on the river, but the governing principle is the same. Should two steamboats unite in ascending or descending the above rivers, there could be no objection, unless greater caution should be required in passing narrow channels.

In Pars. Mar. Law, 497, it is said, "If a barge is necessary to a steamboat, its hire to it will be regarded as a material furnished for its equipment." Amis v. The Louisa, 9 Mo. 629; Gleim v. The Belmont, 11 Mo. 112; The Kentucky v. Brooks, 1 G. Greene (Iowa) 398.

Whether the term "equipment" be the most appropriate one, to designate the use of the barge, when engaged in transporting a part of the cargo of a steamboat, it may not be necessary to inquire; but when the articles transported are the same, or substantially the same, governed by the same propelling power, whether of steam, wind, or the natural force of the current, the rules of navigation apply respectively, to the modes used. And it is proper here to say that the goods, whether conveyed in the body of the steamboat, or in the barge, are subject to the same guaranties and protection. This, it appears to me, is an important principle, especially in regard to steam navigation on our western rivers.

Steam tugs are used in difficult places on our rivers, and in entering our harbors. In such cases, the governing power being in the tug, it is made responsible for the safety of the charge.

I see nothing in the addition of a barge, connected with a steamboat, which necessarily changes the character of a transportation. On the contrary, I see additional security in such a transportation, from the laws which govern it.

No one can fail to see, from the language used in the libel, and the contract, that the parties intended to bind the steamboat Dick Keys and her owners. And this construction is necessary to give effect to the intention of the parties. And where such is manifestly the object, the court will not restrict the meaning of the words used, as they tend to the advancement of commerce.

There is no pretence that in this case any lien arises from supplies or necessaries furnished the Dick Keys. The contract between the parties covers the liabilities for which the boat may be made responsible, and these do not appear to have consisted in what is appropriately called supplies.

In regard to the terms of the contract for the barges, and the time each was used by the respective boats, and the compensation allowed by the district judge, I see nothing

which requires a correction in the decree of the court; it is therefore affirmed.

NOTE. That coal barges and flat boats are not "boats or vessels" subject to admiralty jurisdiction, was held in Jones v. Coal Barges [Case No. 7,458]. Steamboats and lighters employed on tide waters are within the admiralty jurisdiction, but not ferry-boats, or those engaged in ordinary traffic along the shores. Thackeray v. The Farmer [Id. 13,852]. Ferry-boats running between different states are subject to admiralty jurisdiction and subjects of salvage. The Cheeseman v. Two Ferry-Boats [Id. 2,633].