NOTES—INDORSEMENT AFTER DATE OF PAYMENT—INDORSER—DEMAND AND NOTICE—INSOLVENCY OF MAKER.

If a promissory note, payable at a certain day, be indorsed and passed away after its day of payment, it is then a note payable on demand, and demand and notice are necessary to charge the indorser, although he knew the maker to be insolvent at the time he indorsed it.

Assumpsit [by David Stewart] against [Robert French] the indorser of W. A. R.'s note for $150, at sixty days, dated July 16, 1819, indorsed by the defendant, to the plaintiff, on the 16th of October, 1819, in part payment for a gig valued at $300.

Upon the trial of this cause at the last term (Cranch, C. J., absent) the court instructed the jury: "That if the note was passed to the plaintiff, after the same was at maturity, for a full and valuable consideration, the holder was bound to make demand of payment of the same, of the drawer, in a reasonable time after the same was so passed, and to give notice of nonpayment to the defendant, the indorser, unless the jury should believe, from the evidence, that the said defendant practised a deception on the plaintiff in so passing the said note, after it was at maturity, or, that it was known to the defendant that the said W. A. R., the drawer, was insolvent." The verdict being for the plaintiff.

Mr. Dunlop, for defendant, moved for a new trial, on the ground of misdirection of the jury by the court, and cited Farnum v. Fowle, 12 Mass. 89; Sanford v. Dillaway, 10 Mass. 52–54; Berry v. Robinson, 9 Johns. 121; and Chit. Bills (New Ed.) 274, in a note.

Mr. Ashton, for plaintiff, contended that the plaintiff had a right to recover for the balance of the purchase money covered by the note, which was of no value, upon the count for goods sold and delivered.

THE COURT (THRUSTON, Circuit Judge, absent) granted a new trial.

---

## Case No. 13,428.
STEWART et al. v. GORGOZA et al.

[3 Hughes, 459.] [1]

Circuit Court, E. D. Virginia. Jan. 8, 1879.

MECHANIC'S LIEN—BUILDING SHIP—TITLE.

The mechanic's lien law of Virginia does not apply to ships while in the process of being built in a public shipbuilder's yard, under a contract by which the ships were the property of the owners, and not of the builder, from the laying of the keels, in favor of the material men who gave credit to the builder, and not to the ships.

In chancery, on attachment process, under claim of lien by lumber dealers, and against nonresident defendants.

George W. Beach was, in 1877, a shipbuilder in Norfolk, conducting a shipbuilder's yard and an iron works adjacent. In the winter and spring of that year he was engaged in building two brigs for the defendants, Gorgoza's Sons, and one or two or more other vessels for other persons. Under his contract with Gorgoza's Sons they were to be owners of the two brigs from the commencement of work upon them, and were to make payments to him for the value of the work and material as it progressed. These payments were punctually made as agreed. The defendants were then, as they are now, residents of New York City. Beach ordered a bill of lumber and timber from the plaintiffs, Stewart & Tucker, which was delivered in April, 1877. Another bill was ordered, which was delivered on the 19th May following. Beach made some mention, at the time of ordering one or the other lots of this lumber, or his desire or intention to use it in one or the other of the defendants' brigs. All transactions of the sort between Beach and the plaintiffs ceased with the delivery of May 19th. Beach was to have paid for the lumber in cash, but in fact he paid only about a fourth or less of the amount in money. He gave negotiable notes for the rest of the money due, namely, two notes for $500 each and one for $343.18, dated respectively on the 18th and 25th of April, and on the 18th of June, 1877, payable respectively forty, sixty, and thirty days after their dates. One of the notes for $500 was passed off by Stewart & Tucker by discount to a third person, and was not their property at the time of the commencement of this suit. On one of the other notes a payment of $100

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

was made. Except as to this latter credit, the notes are all due, and this suit is brought to recover the amount of them, not from Beach but from the defendants, Gorgoza's Sons. It is not pretended that the plaintiffs furnished this material on the credit of the vessel which they have attached or of the defendants. On the 24th of November, 1877, Stewart & Tucker drew off an account of their claim against Beach, made affidavit to it, and filed it as a claim of lien upon the Harriet G. (one of the brigs named) in the clerk's office of the county court of Norfolk county, conforming thereby to the provisions of the fourth section of chapter 115 of the Code of Virginia, amended by chapter 357, p. 437, of the Acts of Assembly for 1874–75. It is in proof that a considerable part of the lumber and timber furnished by Stewart & Tucker went into other vessels than the Harriet G.; that a portion of it was unfit for use, and was not used, in building vessels; that some of it passed to Beach's assignee in bankruptcy after his adjudication as a bankrupt, in August, 1877, and was sold by the assignee; and that only the better portion of it, probably not the larger portion, went into the Harriet G.

The suit is a proceeding in chancery, commenced by process of attachment in rem, issued against and served on the brig Harriet G., which was relevied by the defendants on bond. The bill makes Gorgoza's Sons defendants, and proceeds against them as nonresidents. It does not make Beach a defendant. The object of the suit is to recover from the defendants a debt due by Beach by subjecting the defendants' property to an alleged lien for the amount now represented by the negotiable notes that have been described. No judgment has ever been obtained by the plaintiffs against Beach for the amount of the notes. The plaintiffs did not prove the claim in Beach's bankruptcy. That the amount of the notes is due from Beach to the plaintiffs has never been determined judicially, or reduced in any manner, form or proceeding to judicial certainty. The notes of Beach to the plaintiffs are a mere matter in pais, in which the defendants have no privity, and for which they are under no sort of personal responsibility,—legal, equitable, or moral.

Godwin & Crocker and Parker & Allen, for plaintiffs.

Garnett & White and Charles Sharp, for defendants.

HUGHES, District Judge. The object of this proceeding is to subject Gorgoza's Sons to this debt through a claim of lien upon a vessel of theirs, into which some of the timber which was the subject of the debt of Beach was put by Beach as a shipbuilder conducting a public shipbuilder's yard, to whom the lumber was delivered on contract to pay cash for it, and not on the credit of the vessel or of the defendants.

The proceeding is founded on the third and fourth sections of the chapter 115 of the Code as amended, which chapter treats "of the lien on land for purchase money, or of mechanics and others for buildings erected or repaired, and of liens on crops for advances." The plaintiffs rely solely upon the provisions of that chapter. It need not be stated that a statute treating of the lien on land or for buildings erected or repaired, vouched in support of a claim like the present one, of a lien on a ship on the stocks, should, in the interest of the freedom of contracts and of commerce, be strictly construed. It has been held on more than one occasion by this court, that the provisions of the chapter of the Code of Virginia just mentioned apply only to buildings, improvements, and property connected with and appurtenant to real estate, savoring of the realty, and that they do not apply to mere personalty, mere chattels. If it were otherwise, the greatest injury would be inflicted on the innocent purchaser of personal property; and the most serious embarrassment and obstruction would be introduced into all the ordinary transactions between citizen and citizen. A farmer could not purchase safely a wagon, or a plough, or a wheelbarrow from a wheelwright, without first going to the clerk's office of his county and ascertaining whether a claim of lien had been filed there by the mechanic who might have worked on the article, or the material man who might have furnished the wood or iron used in its construction. I do not think that any other construction of the provisions of chapter 115 than that just indicated, which is, indeed, implied in the title of the chapter itself, is admissible logically, or could be enforced in practise. And therefore it is hardly necessary for me to do more than hold that the claim of lien filed against this brig by the plaintiffs on the 24th of November, 1877, under section 4 of the chapter of the Code under review, does not establish a lien upon a ship on the stocks, such a structure not being a "building" erected on land, or an "improvement" or "property" connected permanently with land, according to what seems to me to be the necessary intendment of that chapter of the Code.

But this claim of lien could not be allowed, even if we could treat the chapter as covering personal property not connected with or savoring of the realty. Section 4 requires any person furnishing material about a building for a general contractor, in order to make good his lien, to file within thirty days after the completion of the work, on affidavit, a true account of the materials furnished, in the clerk's office of the county court of the county. The materials claimed in this suit were furnished, and the "work" of delivering them completed, on the 19th day of May, 1877, and the plaintiffs' account and claim of lien were not filed until the 24th of November, 1877,

which was too late, not being within thirty days. This omission is not cured by section 7 of chapter 115 of the Code, giving a longer time for filing the claim of lien in cases where the "contractor" gives credit on payments for a "building." The contractor there meant can be only the contractor for the building, and the credits contemplated are credits given to the owner or person for whom the building is constructed. Here the contractor, Beach, received credit from Stewart & Tucker, and did not give it to Gorgoza's Sons. Here the owners of the "building," Gorgoza's Sons, were all the while in advance in their payments, and not receiving credits on any of them. Nor have the plaintiffs brought their case within the terms of the fifth section of this chapter of the Code, which requires of subcontractors and material men, in addition to the requirements of section 4, that they shall, besides filing their claim of lien within thirty days after the completion of their "work," notify the owner of the "building" of the amount of their claim for materials within twenty days after the "building" is completed. It is not pretended that this provision of law has been complied with. The claim of the plaintiffs, therefore, is not good, even in view of the requirements of chapter 115.

On the merits, also, the case is against them. The Code requires by necessary implication that the materials furnished by a lumberman shall be furnished specially for a building, and must be used in its construction. This lumber and timber was furnished to a shipbuilder engaged in building several vessels, and the shipbuilder was at liberty, under his engagement with the plaintiffs, to put their stuff into any of the vessels he was constructing, or to sell it, or to ship it off without using it. Surely the mere casual mention of his desire or intention to use the lumber in two brigs, at the time of ordering it, without any stipulation direct or indirect that he should use it only in those brigs, cannot bind an owner hundreds of miles distant to pay to the lumber dealer the price of timber bought for use and used indiscriminately in that and other vessels.

On the law and the merits the bill must be dismissed, and I will sign a decree to that effect.