## Case No. 9,000.

### MALTBY v. STEAM DERRICK BOAT.

[3 Hughes, 477.] [1]

District Court, E. D. Virginia.    March 29, 1879.

SALVAGE—RAISED FROM BOTTOM OF CHANNEL—DERRICK-BOAT.

A derrick-boat raised from the bottom of the channel of a public navigable river may be the subject of a libel for salvage in admiralty.

[Cited in Cope v. Vallette Dry-Dock Co., 16 Fed. 926; Aitcheson v. Endless Chain Dredge, 40 Fed. 254.]

[This was a libel by E. O. Maltby against a steam derrick-boat for salvage.]

R. M. Hughes, for libellants.

W. B. Martin, for Albemarle & C. Canal Co., intervener and claimant.

HUGHES, District Judge. This is a libel in rem for salvage in raising a sunken steam derrick-boat from the channel of the Blackwater river, near Franklin, Virginia. The libellants sent around from Norfolk to the

wreck for the purpose, by way of Currituck and Albemarle sound, a wrecking schooner, furnished with chains, pumps, two divers, and a crew of two or three other men. The work of raising consumed about four days; but the schooner remained somewhat longer by the side of the derrick-boat until the hole in her bottom was made entirely safe and stanch. The schooner was gone from Norfolk in making the trip to and fro, and in executing the job, about fifteen days. The derrick-boat had been in the employment of the United States, on a hire of $250 a month, in removing obstructions to navigation from the channel, when it sprung aleak and sunk in ten feet water. It was owned by the Albemarle & Chesapeake Canal Company, of which Marshall Parks is president. The salving was undertaken by the libellant at the request both of Mr. Parks and of the United States officer in charge of the derrick-boat. The boat had no machinery for propulsion, or sails. It was a boat of two decks, with a mast for hoisting purposes, and a steam-engine and machinery. The United States continued to use the derrick-boat after it was raised from the channel by the libellants, and returned it in good condition to the Albemarle & Chesapeake Canal Company, after having had it in possession, in all, about four months. The vessel was libelled in this cause after its restoration to the possession of the company. The company intervenes in this suit by answer, and objects to the amount of salvage claimed, and also to the jurisdiction of the admiralty court over the case, on the ground that the derrick-boat was not designed for navigation or commerce.

I shall consider in this opinion only the latter objection. It is contended in argument that a derrick-boat is not the subject of this jurisdiction, because it is not used in commerce and navigation. This might be a valid objection if the libel were for contract of affreightment, or for tort by collision, or such cause of action; but it is not a valid objection to a libel for salvage. It has long been held that property, whether it has been an actual instrument or subject of commerce or not, may be the subject of salvage.

In the case of The Emulous [Case No. 4,480], Judge Story held, in 1832, that salvage service extended to all property "saved on the sea or wrecked on the coast of the sea." In the case of The Emblem [Id. 4,434], Judge Ware, one of the most learned and soundest admiralty lawyers, awarded salvage from saving the trunks of a passenger containing silver coin. The coin was property forming no part of the cargo of the vessel. In the case of Hennessey v. The Versailles [Id. 6,365], Mr. Justice Curtis said: "The relief of property from an impending peril of the sea, by the voluntary exertions of those who are under no legal obligations, etc., constituted a technical case of salvage." In the two cases of A Raft of Spars [Cases Nos. 11,528, 11,529], Judge Betts decided in the latter case

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

that such property was a proper subject for a libel for salvage, and in the former case refused to order the salvage suit to be set aside or to be stayed because there was a replevin suit pending in a court of common law for the salvaged property. In Taber v. Jenney [Case No. 13,720], a libel in admiralty was sustained by Judge Sprague to recover the value of the carcass of a whale which had been found floating in whaling waters by the defendants, and taken and converted to their own use. In the case of The Union Express [Id. 11,363], Judge Longyear held that a barge found adrift in Lake St. Clair was subject of salvage. In the case of Fifty Thousand Feet of Timber [Id. 4,783], Judge Lowell held, notwithstanding two or three adverse decisions, hereafter mentioned, which he cited and reviewed, that a raft of timber was a proper subject of a libel for salvage, and defined the law to be that "a salvage service is performed when goods are saved from the peril of the sea, or on other navigable waters; or cast upon the shores thereof." The same judge held the same view in a valuable and learned judgment in the case of The Louisa Jane [Id. 8,532], where he held that a specific "contract for saving property on the sea or in a harbor, did not oust the admiralty court's jurisdiction of a proceeding in rem or in personam, brought by the contractor himself." There is no judge whose decisions carry greater authority with the profession than those of Judge Lowell. In the case of Cheesman v. Two Ferry-boats [Id. 2,633], Judge Leavitt held that two new and never-used ferry-boats, which had been brought down to Cincinnati for the purpose of being put upon one of the ferries there, and moored at high-water mark above the city, on the Ohio side, which had broken loose during a great flood and been saved, not by landsmen on shore, but by a steamboat which encountered perils of the flood by doing so, many miles below on the Ohio river, were the proper subjects of a libel for salvage. There is also the case of The Senator [Id. 12,664], which was that of a scow, loaded with lumber, water-logged and abandoned on Lake Erie, and saved, in which Judge Longyear held that a libel for salvage was proper. I know of but two American admiralty cases which are decidedly adverse to the rulings which have been thus cited. One of them is the case of The Hendrik Hudson [Id. 6,355].—an old steamboat fitted up as a floating hotel,—which is directly against them; and the other is the case of Tome v. Cribs of Lumber [Id. 14,083]. This latter case, however, is not directly adverse. The rafts of lumber were saved on the shore of the Chesapeake bay, below the mouth of the Susquehanna river, where they had been moored, and had broken loose in a high freshet. They were saved by farmers and landsmen, who had incurred no risk and exercised no peculiar skill in saving them; but who had merely taken possession of them when they floated near the shore, and fastened them to trees on the shore. The service was wholly destitute of commercial or maritime attributes. These are the only American cases of which I know where the character of the property saved was made the objection to the admiralty jurisdiction in cases of salvage, and where the decision was adverse and based upon the non-commercial character of the property saved. The weight of the American authorities is, therefore, heavily against these two decisions, and I am constrained to disregard them, and to hold that any valuable property may be the subject of a libel for salvage in admiralty, provided that it shall have been saved under conditions which of themselves give the admiralty jurisdiction.

In the case at bar the saving was done by persons engaged in wrecking service, and furnished with and using a wrecking schooner and other wrecking appliances; and the principal and pivotal question is, was the saving done within the territorial theatre of the admiralty jurisdiction? The property saved was such as could be the subject of a libel for salvage; was the place where it was saved within that jurisdiction? The derrick-boat was sunk in the channel of a navigable river—navigable from the sea. The government of the United States was using the boat at the time in clearing away obstructions to the navigation.

It was formerly held that the admiralty jurisdiction of the courts of the United States, like that of the English courts, extended only to tide-waters. But, since the decision of the supreme court of the United States in The Genesee Chief, 12 How. [53 U. S.] 449 (a decision which has been followed by a series of like decisions, more and more liberal on this point), the test of the admiralty jurisdiction, as to locality, has been the inquiry, was the water in question a public navigable water? And, therefore, the law of those cases which hold that property "saved on the sea or wrecked on the coast of the sea" must be read with the additional words, "or on the public navigable rivers and waters of the United States." The cases to which I have just referred are the following: The Genesee Chief, 12 How. [53 U. S.] 449; Fretz v. Bull, Id. 446; The Magnolia, 20 How. [61 U. S.] 296; The Commerce, 1 Black [66 U. S.] 574; The Hine, 4 Wall. [71 U. S.] 555; The Belfast, 7 Wall. [74 U. S.] 624, and other cases.

Before these cases arose there had been a period in the history of the American law in which our courts had made their rulings in accordance with the rulings of the English courts, which English decisions had been made during a period when, through the jealousy of the high common-law courts, the jurisdiction of the admiralty in England had been much trammelled. But our courts have felt, and acted upon, the necessity of emancipating themselves from these English influences for many years, so that early English

precedents on the subject of the admiralty jurisdiction are not regarded in this country. Indeed, they have ceased to be law even in England, where in May. 1861, parliament interfered, and, by special act in regard to the jurisdiction of the admiralty, struck off the shackles which had bound it for centuries, and gave to admiralty courts in England the broad and liberal jurisdiction which they possess in the world at large. It was during the period of the original rulings of our American admiralty courts, and the subsequent transition period of opinion as to the character of the waters in which the jurisdiction of admiralty could be exercised, that some decisions were rendered by our courts tending to throw doubt on the question of the character of the property which was the subject of libel for salvage in admiralty. But I think the test as to what is the subject of salvage is no longer, whether it is a vessel engaged in commerce or its cargo or furniture, but whether the thing saved is a movable thing, possessing the attributes of property, susceptible of being lost and saved in places within the local jurisdiction of the admiralty. There are cases in the books in which the courts have denied salvage where property other than vessels of navigation or their furniture or cargoes has been saved; but these will nearly all be found to have turned on questions of place, or questions not affecting the character of the thing saved. The Ann Arbor [Case No. 408], decided in 1858, was that of a canal-boat libelled on a contract of affreightment made in Rochester at the west end of the Erie canal, in which it was held that such a contract by a canal-boat made far inland was not within the admiralty jurisdiction, though process of arrest was executed on the Hudson river. But this was not a case of libel for salvage. In Jones v. Coal Barges [Id. 7,458], decided in 1855, the libel was for a collision just below a lock in the Monongahela river in the mountains of Pennsylvania; and the court decided that the case depended upon the act of congress of February. 1845 [5 Stat. 726], giving admiralty jurisdiction upon the great lakes "and the rivers and waters connecting" them. The Monongahela was not such a river, and the court on that ground denied the jurisdiction of the admiralty to entertain a libel for that collision in such a stream. It is plain that that case did not decide that coal-boats were not proper subjects of a libel for salvage. There are several cases in which libels have been filed for injuries to flat-boats and their cargoes, inflicted by steamboats on our Western rivers, which have gone up by appeals to the supreme court of the United States. In none of these cases has a doubt been intimated by the supreme court that they were properly cases within the admiralty cognizance. In the case of Fretz v. Bull, before cited, damages were allowed against the owners of a steamboat for running into and sinking a flat-boat. This was a case of collision, in which the jurisdiction is much more doubtful as to the property concerned than in cases for salvage. The cases of Culbertson v. Shaw, 18 How. [59 U. S.] 585, and Nelson v. Leland, 22 How. [63 U. S.] 48, were of collisions by steamers with flat-boats or barges. Surely if such boats as these could be made the subject of admiralty jurisdiction by libels for collision, a derrick-boat may be held to be a proper subject for a libel for salvage. I so hold in the present case.

As to the merits, the facts seem to be these: the libellant proves an expenditure of money, $600 in cash, in the work of raising the derrick-boat, and that his wrecking schooner was engaged in and about the job some two weeks, which must have been worth $10 a day, at the least, or $150. The derrick-boat, I think from all the evidence in the case, must have been worth, when raised, not less than $2000 or $2500. A decree may be taken for $750 and costs.