INLAND & SEA-BOARD COASTING CO. *v.* THE COMMODORE.

*(District Court, E. D. Virginia.  August 19, 1887.)*[1]

SHIPPING—LIABILITY OF VESSEL FOR TORT.
　　A steam-dredge, which negligently leaves its anchor in a navigable channel where it had been at work, is liable in admiralty for damages caused to a vessel which runs into the anchor.

In Admiralty. Libel for damages.
*Sharp & Hughes*, for libelant.
*Harmanson & Heath*, for respondent.

HUGHES, J. On the morning of the 21st December, 1884, a steamer of the libelant, the Jane Moseley, after backing out from the cut which has been dug from the wharves at Cape Charles City to the channel of Cherrystone river, in rounding into the channel with bow to the southward, struck an anchor which was lying on the bottom where she passed, was sunk, and sustained damages, which are the subject of this libel. The Moseley had been pulled out through the cut from the wharf into the channel, by a tug, before running upon the anchor. The anchor had been originally used at or near that place by the master of the dredge Commodore, for holding the dredge fast while at work there; was afterwards left there, with a buoy attached, to mark the southern side of the entrance of the cut into the channel; and had not been removed after the clump of piles now standing there had been put in that place. The anchor was lying under the water, with or without a buoy attached, when the Jane Moseley ran foul of it on the morning which has been mentioned.

[1] Publication delayed by failure to obtain copy.

The case turns upon two questions, viz.: (1) Whether the anchor was in a place to obstruct navigation; and, (2) if so, whether the steam-dredge Commodore, is liable for the damages resulting from the accident in question.

The clump of piles now marking the southern side of the entrance of the cut from Cherrystone channel was placed there before the accident, and stood there at the time of it. Bowman, the engineer who had charge of the work at Cape Charles City, places this clump in eight feet water on the map he has filed in the cause, and which I mark "Map B." He marks the spot where the anchor lay at the time of the accident in water of not less than eight feet, just north and north-west of the clump of piles. Indeed, the anchor must have been in nearly the position marked on Bowman's plat, in order to have been struck by the Moseley, which cleared or was clearing the clump of piles at the time of the accident. It is impossible that it could have been some distance within and south-east of the clump of piles in five feet water, as stated by Turner, and marked by him on the plat which he filed, and which I mark "Map C." If it had been where Turner locates it, the Moseley would have been kept off by the clump of piles; and, even if the piles had not interposed, it would have been difficult for a vessel drawing seven feet of water, as the Moseley did, to have run upon an anchor lying in five feet water. I am conclusively of opinion that the anchor lay where the Moseley struck it before striking the clump of piles lying beyond, and that it lay where any vessel navigating the water there was liable to run foul of it.

As to whether the anchor was put where it was, or in that vicinity, by the direction of Field, the master of the Commodore, I think that point is settled by the testimony of respondents, especially of Colton. Field was responsible for the original deposit of the anchor there, for any removal of it subsequently by persons subject to his orders, and for its not having been taken up after the piles had been put up near it. It is quite immaterial whether the anchor was marked by a buoy. It ought not to have been there at all.

The only question left to be considered is whether the negligence of Field, master of the Commodore, bound the dredge. Field is known in the transaction solely as the master of the dredge. The anchor that was negligently left at the bottom of an important channel of navigation was a part of the apparel and outfit of the dredge, and was used by the dredge in the work she was engaged in. The tort was the tort of the dredge; the negligence which caused the tort was the negligence of the dredge. Respondent's counsel lay no stress upon this point, and I think they cannot do so with reason or success. I will sign a decree for the libelant.