A. F. BARTLETT & CO. *v.* STEAM DREDGE NO. 14.

Maritime Liens— Steam Dredges —Water-Craft —What Con-
stitutes.

> A steam dredge, used solely for digging under water, and not
> transporting even the material taken from the bed of the
> stream, is not within 2 How. Stat. § 8236, giving a lien for
> labor and materials furnished, etc., upon "every water-craft
> * * * used or intended to be used in navigating the waters
> of this State."

Appeal from Wayne; Hosmer, J. Submitted October
25, 1895. Decided November 5, 1895.

Proceedings by A. F. Bartlett & Company against
Steam Dredge No. 14, Steam Dredge No. 15, and Carkin,
Stickney & Cram, to enforce a lien under the water-craft
law. From a decree for defendants, complainant
appeals. Affirmed.

*T. E. Tarsney* and *W. W. Wicker (H. D. Goulder*, of coun-
sel), for complainant.

*Elbridge F. Bacon* and *Harlow P. Davock*, for defend-
ants.

Grant, J. The complainant furnished labor and
materials for the construction at Saginaw, Mich., of the
two dredges involved in these suits. The contracts were
made with Carkin, Stickney & Cram. These suits were
instituted to enforce liens upon the dredges for such
labor and material, under chapter 285, 2 How. Stat. As
described by the defendants,—

"The dredge hull is virtually a large scow, with a
boiler, engine, and different kinds of machinery, a crane,
or boom, and a dipper. It has no means of propulsion,
except by towing, nor any rudder. The dredge is used for
digging material under water, and is not used for trans-
portation. It is the same thing as a steam shovel on

land. It has no master, and is not used for transporting passengers, freight, or anything."

The sole purpose of these dredges was to dig, not to navigate. They are not moved from place to place for the purpose of navigation, as are vessels engaged in commerce, nor are they intended to be used for transporting passengers or freight, or the material which they bring up from the lake or river beds.

The act providing for liens is entitled "An act to provide for the collection of demands against water-craft." The second section reads as follows: "Every water-craft of above 5 tons burthen, used or intended to be used in navigating the waters of this State, shall be subject to a lien thereon," etc. It certainly would be a forced construction to hold that such structures are "used or intended to be used in navigating the waters of this State." If this were so, then every structure built so that it could be towed over the water to do work at different places must be held to be a water-craft, under this law.

The term "vessel" is defined by Congress as including "every description of water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." Rev. Stat. U. S. § 3. A dredge is incapable of being used as a means of transportation on the water, except by removing its machinery, and transforming it into something for which it was never intended to be used. Barges are vessels within the admiralty jurisdiction, and subject to maritime liens. *The Dick Keys*, 1 Biss. 408; *Disbrow* v. *The Walsh Bros.*, 36 Fed. 607. So, also, is an old steamboat, with all its machinery removed, and fitted up as an excursion boat. *Mosser* v. *The City of Pittsburg*, 45 Fed. 699. So, also, are lighters used in conveying lumber to vessels lying in deep water. *The General Cass*, 1 Brown, Adm. 334. So it has also been held that a dredge and scows are to be treated as one concern, subject to a maritime lien. *The Starbuck*, 61 Fed. 502; *The Alabama*, 22 Fed. 449. It was said in

the latter case, "The dredge boat by itself might not be up to the test." It has also been held that a floating elevator used in the harbor of New York was subject to a maritime lien. *The Hezekiah Baldwin*, 8 Ben. 556. The Baldwin was in fact a canal boat, with an elevating apparatus attached, for the purpose of transporting grain from one vessel to another, and was moved about the harbor for that purpose. She was nothing more than a floating vessel directly engaged in commercial movements, just as much as were the barges and lighters in the above-cited cases.

*The Aitcheson* v. *The Endless Chain Dredge*, 40 Fed. 253, directly sustains the complainant, and holds a steam dredge to be a subject of admiralty jurisdiction. The opinion disposes of this branch of the case in a single sentence, at page 254, and treats the question as settled by the above cases of *The Baldwin*, *The Alabama*, and, also, *The Pioneer*, 30 Fed. 206; *Woodruff* v. *One Covered Scow*, Id. 269. The opinion also says that the court has incidentally held likewise in *Maltby* v. *Steam Derrick Boat*, 3 Hughes, 477, and *Inland, etc., Coasting Co.* v. *The Commodore*, 40 Fed. 258. *The Pioneer* directly supports the decision. In the Woodruff case it was held that a contract for a floating boathouse is a maritime contract, by reason of the subject-matter. The structure in that case was a float used to afford persons a means of egress, from small boats coming to the slip, to the adjoining wharf, and thence to the shore. The Maltby case was decided upon the rule governing salvage cases. The court says at page 478:

"It is contended in argument that a derrick boat is not the subject of this jurisdiction, because it is not used in commerce and navigation. This might be a valid objection if the libel were for contract of affreightment, or for tort by collision, or such cause of action; but it is not a valid objection to a libel for salvage. It has long been held that *property*, whether it has been an actual instrument or subject of commerce, or not, may be the subject of salvage."

In all the cases cited by the learned counsel for the complainant, excepting those of *The Pioneer, The Aitcheson,* and the Maltby case, the floating structures were all directly and immediately used, and intended to be used, in maritime transportation. The following cases appear to be directly opposed to the contention of the complainant: *Knisely* v. *Parker*, 34 Ill. 481; *The Nithsdale*, 15 Can. Law J. 268; *Olmsted* v. *McNall*, 7 Blackf. 387; *The Farmers' Delight* v. *Lawrence*, 5 Wend. 564; *The Hendrick Hudson*, 3 Ben. 419; *The Big Jim*, 61 Fed. 503; *Ruddiman* v. *A Scow Platform*, 38 Fed. 158; *Parkinson* v. *Manny*, 2 Grant, Cas. 521; *Nease's Appeal*, 3 Grant, Cas. 110. This subject has very recently been carefully examined and reviewed by the United States court for the Eastern district of Michigan in *Muellerweisse* v. *Pile Driver E. O. A.*, 69 Fed. 1005, in which Judge Swan reached the conclusion that such craft are not vessels, within the maritime law. He also says that the case of *The Pioneer* is irreconcilable with those of *The Hudson, The Pulaski*, 33 Fed. 383, *The Ruddiman*, and *The Big Jim*. Whatever may be the rule in the federal courts, we cannot construe the water-craft law of Michigan to include a dredge.

It follows that the decree must be affirmed, with costs.

The other Justices concurred.