[L. A. No. 3001.   Department Two.—June 26, 1914.]

## UNITED IRON WORKS, Respondent, v. OUTER HARBOR DOCK AND WHARF COMPANY (a Corporation), Appellant.

Sale—Dredge Constructed Under Written Contract—Evidence of Surrounding Circumstances not Admissible to Show Warranty of Fitness.—In an action to recover the purchase price of a dredge constructed by the plaintiff for the defendant, in pursuance of the terms of a written contract calling for its construction in accordance with accompanying plans and specifications, parol evidence of the "surrounding circumstances" is not admissible under section 1647 of the Civil Code or section 1860 of the Code of Civil Procedure, to show a warranty by the plaintiff, not expressly embodied in the written contract, that the dredge would be capable of doing certain specific work.

Id.—Admissibility of Evidence of Surrounding Circumstances.— These sections of the code simply enact the common-law rule, and it is not within their contemplation that a contract reduced to writing and executed by the parties shall have anything added to it or taken away from it by such evidence of "surrounding circumstances." The rule of evidence embodied in such sections is invoked and employed only in cases where upon the face of the contract itself there is doubt, and the evidence is used to dispel that doubt, not by showing that the parties meant something other *than* what they said but by showing what they meant *by* what they said.

Id.—Parol Evidence of Warranty in Case of Written Contract.— Where the parties have reduced to writing what appears to be a complete and certain agreement, importing a legal obligation, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the whole of the agreement between the parties, and parol evidence of prior, contemporaneous or subsequent conversations, representations, or statements will not be received for the purpose of adding to or varying the written instrument. If, therefore, such a writing exists between the parties, and it contains no warranty at all, no warranty can be added by parol; if it contains a warranty of some kind or to some extent, parol evidence will not be admitted to extend, enlarge, or modify that which the writing specifies.

Id.—Warranty of Fitness for Particular Work.—Where such contract merely warranted that the dredge would move a specified quantity of material a given distance, provided it was operated in specifically defined dredgable material, no warranty was implied that the dredge would be capable of dredging the bottom of a particular

CLXVIII Cal.—6

harbor, notwithstanding the parties understood that the general purpose for which the dredge was to be used was the doing of such work. Under such circumstances, the provisions of section 1770 of the Civil Code that "one who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose," has no application.

ID.—EVIDENCE—WRITTEN CONTRACT EMBODYING DETACHED INSTRUMENT.—Where a written contract sued on makes reference to another detached but specifically identified instrument as forming a part of the contract, such collateral writing, whether it tends to make the whole contract ambiguous or uncertain or not, is always admissible in evidence, and to refuse it admission will in the ordinary case be grave and injurious error.

ID.—REFUSAL TO ADMIT DETACHED INSTRUMENT IN EVIDENCE—ERROR WITHOUT INJURY.—The refusal, however, to admit such a collateral instrument in evidence, while always a technical error, will not warrant a reversal, unless it be shown that injury resulted from it.

ID.—PROVISION EXPRESSING OPINION AND NOT WARRANTY OF FITNESS.—A provision contained in a letter of proposal from the seller of the dredge, and made a part of the contract, as follows: "We have looked at your grounds and have designed you a dredge which we believe will fully meet your requirements, and trust you may favor us with your order for same," imports nothing more than the expression of an opinion, and is not an express warranty that the dredge would do the work desired of it.

ID.—GENERAL MECHANICS' LIEN LAW NOT APPLICABLE TO VESSELS.—The provisions of the general Mechanics' Lien Law, embodied in section 1183 et seq. of the Code of Civil Procedure, do not apply to vessels.

ID.—INSTRUCTION—DIRECTION TO FIND IN PARTICULAR WAY—DISPUTED FACT—REVIEW ON APPEAL.—Where the trial court, upon a disputed question of fact, in effect positively instructed the jury to find for one of the parties, the appellate court is not able to make a new finding. Its power is limited either to the ordering of a new trial or to a modification of the judgment.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Lewis W. Andrews, Thos. O. Toland, and Cedric E. Johnson, for Appellant.

Davis, Kemp & Post, for Respondent.

HENSHAW, J.—This action was brought to recover the unpaid part of the purchase price of a dredge constructed by plaintiff for defendant. Defendant needed a dredge to deepen a portion of the harbor of San Pedro in aid of its dock and wharf business. The purpose for which the dredge was to be used and the place where it was to be used were well understood by the parties. Plaintiff had in a letter designated "D" made an offer to construct dredges of different capacity and design for different prices. This letter concluded with the following statement: "We have looked at your grounds and have designed you a dredge which we believe will fully meet your requirements and trust you may favor us with your order for same." In the end, these negotiations resulted in an elaborate contract for the construction of the dredge. This contract began with the following:

"It is hereby understood and agreed that the party of the first part will build and furnish to the party of the second part one 12″ suction dredge in accordance with the accompanying plans and specifications and the proposal dated 8th of January, 1909, of the party of the first part, marked 'D.' The hydraulic and operating conditions of dredge to be as follows:"

The contract is too long to be set forth in full but it goes into minute details concerning the construction of the hull, the nature and character of the dredging machinery and the time for the completion. It further provided that the plaintiff would furnish a captain and crew to operate the dredge for the defendant for a period of thirty-five days after completion. In this connection it was agreed:

"The party of the first part agrees that during the 35 days in which they are to operate the dredge that they will make a test run of seven consecutive days during which time they agree to handle an average of 110 cubic yards of material per hour when working in dredgable material, at such point in the channel to be dredged as may be designated by said party of the second part, at a depth of from 10 to 20′ and transporting the spoil (material dredged) to a distance of 1000′ or more through a 14″ pipe line, providing electric current furnished is 2000 volts, 50 cycle, three phase alternating current; so that the electric motors will operate at the proper speed. It being understood that the said dredgable material shall consist of sand, gravel and clays, excluding

gravel or boulder deposits wherein the stone is larger than 8″ or the percentage of large stones interfere with obtaining the quantity due to the interference of said large stones; also excluding sand rock formations.''

The trial was had before a jury, verdict and judgment were for plaintiff and defendant appeals.

The dredge was constructed and turned over to the defendant. It did not prove satisfactory, did not operate successfully in removing material from the bed of the harbor and hence this controversy arose. The fundamental difference between the parties litigant may be briefly stated. Appellant contends that plaintiff agreed under a warranty to build and deliver to the defendant a dredge capable of doing this specific work in which case clearly the proved failure of the dredger so to do would relieve appellant from liability of payment. Respondent on the other hand contends that the full measure of its duty is defined by the written contract between the parties and that no such warranty is therein contained.

Appellant undertook by parol evidence of the ''surrounding circumstances'' to show that there was such a warranty given even if it were not expressly embodied in the written contract. The objections to the admission of this evidence were sustained and this is the first one of the asserted errors, the contention being that under section 1647 of the Civil Code and section 1860 of the Code of Civil Procedure such evidence was clearly admissible. In this, however, appellant errs. ''These sections but enact the common-law rule. It is never within their contemplation that a contract reduced to writing and executed by the parties shall have anything added to it or taken away from it by such evidence of ''surrounding circumstances.'' This rule of evidence is invoked and employed only in cases where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other *than* what they said but by showing what they meant *by* what they said. (*Harrison* v. *McCormick*, 89 Cal. 327, [23 Am. St. Rep. 469, 26 Pac. 830] ; *Kreuzberger* v. *Wingfield*, 96 Cal. 251, [31 Pac. 109] ; *Balfour* v. *Fresno Canal Co.*, 109 Cal. 221, [41 Pac. 876] ; 3 Jones's Commentaries on Evidence, sec. 454.) Appellant relies upon the case of *Snyder* v. *Holt Manufacturing Co.*, 134 Cal. 324, [66 Pac. 311], as expressing a contrary doctrine. We need not be at pains to discuss this case to the

end of determining whether or not appellant's position in this regard is well founded. Suffice it to say that if such a construction is permissible the principle is so contrary to all adjudications, our own as well as those elsewhere, that it cannot be recognized as authority. The principle is thus succinctly stated in 2 Mechem on Sales, section 1254: "The rule is well settled that where the parties have reduced to writing what appears to be a complete and certain agreement, importing a legal obligation, it will, in the absence of fraud, accident or mistake, be conclusively presumed that the writing contains the whole of the agreement between the parties, and parol evidence of prior, contemporaneous or subsequent conversations, representations or statements will not be received for the purpose of adding to or varying the written instrument. If, therefore, such a writing exists between the parties, and it contains no warranty at all, no warranty can be added by parol; if it contains a warranty of some kind or to some extent, parol evidence will not be admitted to extend, enlarge or modify that which the writing specifies." Such is the precise declaration of this court in *Germain Frvit Co.* v. *Armsby Co.,* 153 Cal. 585, [96 Pac. 319]. Nor is this consideration influenced in the slightest by the provisions of section 1770 of the Civil Code to the effect that "one who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." True it is that the parties here understood the general purpose for which the dredge was to be used,—namely, the deepening of appellant's tide lands in San Pedro harbor and the filling in of other of its lands with the dredged material. If appellant had represented to respondent that such was the dredge which they desired and respondent had made answer that they would build for and furnish to appellant such a dredge, the section of the code would have immediate applicability. But respondent did no such thing. It did not pretend to say that the dredger would dredge the harbor bottom. All that it warranted in this particular was that the dredge would move a specified quantity of material a given distance providing it was operating in dredgable material which was very specifically defined.

The second error advanced by appellant is in connection with the same matter and grows out of the following facts. As above set forth the contract actually entered into between

the parties expressly declared that the plaintiff would build the dredge "in accordance with the accompanying plans and specifications and the proposal dated 8th of January, 1908, *of the party of the first part marked 'D.'*" At the trial defendant offered proposal "D" in evidence as being referred to and made a part of the contract between the parties. Respondent's objection to the introduction was on the ground that the contract without proposal "D" was complete in itself and that to admit proposal "D" would make the contract ambiguous and uncertain." Of course, where, as here, the contract between the parties makes reference to another detached but specifically identified instrument as forming a part of the contract such a collateral writing whether it tends to make the whole contract ambiguous or uncertain or not is always admissible in evidence and to refuse it admission will in the ordinary case be grave and injurious error. It has been said (17 Cyc. 365) upon the authority of one of our cases that the rule demanding the introduction of collateral writings which have been expressly made a part of a contract by reference is inapplicable to an instrument which, although referring to them, is complete in itself. True it is that cases may arise where the collateral instrument has no material bearing upon any terms or conditions of the main instrument so that its rejection from consideration, while error, will be error which does not result in injury. Such, indeed, when we come to consider it, will be found to be the case here, but the fact nevertheless remains that it is always proper to receive such collateral instrument in evidence. If it does affect the terms of the contract the party insisting on its introduction has the right to establish this fact; if it does not affect the terms of the instrument his right is none the less. The only consequence is that the result of its introduction is valueless. The one citation supporting the language of Cyc. above quoted is from the unreported case of *Tustin Fruit Assoc.* v. *Earl Fruit Co.,* 6 Cal. Unrep. 37, [53 Pac. 693]. Therein a contract was offered which began with the recital: "Being desirous of having my oranges handled in the manner set forth in the by-laws of the Tustin Fruit Association." This contract was offered in evidence unaccompanied by the by-laws to which it referred. An objection was made upon that ground. This court made answer as follows: "We agree that no part of a document should be wrenched from its context,

and received as a disjointed member of what is properly an indivisible unit of evidence. But here the paper offered by plaintiff was no such fragment. It seemed to be complete in itself, so far as regards authority to sell the subscriber's fruit, and contained no intimation that the by-laws varied or might vary its import, for in terms it purported to conform to the by-laws. . . . Code Civ. Proc., sec. 1854; *Toohey* v. *Harding,* 1 Fed. 174, 177; note to *Rouse* v. *Whited,* 82 Am. Dec. 345, and cases cited." This is, in effect, but a declaration that this court would not reverse the case for this technical error unless it was shown, as it was not, that injury resulted from it.

So, in the case at bar, we conclude that it was unquestionably the duty of the court to have admitted in evidence the proposal "D" so plainly by reference made a part of the contract between the parties. It remains to be considered whether appellant suffered injury by the court's refusal to do so.

It is conceded by appellant that the contract without proposal "D" is complete and controlling in all particulars save one. As to that one it is argued that there should be read into the contract the language above quoted from proposal "D" to the following effect: "We have looked at your grounds and have designed you a dredger which we believe will fully meet your requirements and trust you may favor us with your order for same." This may be done. But appellant's effort to erect out of this language a warranty that the dredge would do the work desired of it is futile. The language itself imports nothing more than the expression of an opinion. It falls far short of an express warranty, a warranty which if appellant had desired, it should have caused to be inserted in the contract. To the contrary, however, the contract does contain express warranties of very much more limited character than that contended for by appellant, and Mechem's rule, as above laid down and approved by this court comes into immediate applicability—if the contract "contains a warranty of some kind or to some extent, parol evidence will not be admitted to extend, enlarge or modify that which the writing specifies." On this proposition the case of *Bancroft etc.* v. *San Francisco Tool Co.,* 120 Cal. 228, [52 Pac. 496], will be found to be an exact parallel.

Appellant advances a number of propositions of fact. They present questions controverted in the case. The evidence upon them is conflicting. The verdict of the jury is conclusive on these propositions against appellant. Thus, it contends that the dredge was never completed. There is the positive testimony of a witness that the dredge was completed upon August 15th and that the operation of it began on August 26th. Again it is said that plaintiff is not entitled to recover because admittedly the dredge did not make the seven days continuous run during which it was to remove one hundred and ten cubic yards per hour of dredgable material. But the evidence of respondent shows that it was at all times willing and able to make the test, but that appellant was unable, or at least failed, to designate dredgable ground for the operation and that the ground in which the dredger actually operated was wholly unsuitable. As an argument of the incompleteness of the dredge appellant urges that the winding gear and cutter were changed after the time fixed for the commencement of the seven days' test. But respondent's evidence upon this was that the winding gear and cutter were suitable for the work to be done of the character specified in the contract, and that the changes were made in the effort to operate it in unsuitable ground not contemplated by the contract. Again, it is said that the dredge was never brought up to contract capacity, that is to say, it never proved its ability to handle an average of one hundred and ten cubic yards of material per hour. But there is positive testimony on behalf of respondent that the dredge would handle this amount of material, working in the ground specified in the contract. Again, it is contended that the dredge was improperly constructed. But this really means that it was inefficient, not for the work which it contracted to do, but for the work which it was called upon to do, for it is indisputably shown that the dredge—hull and machinery—was built under agreed plans and specifications, and that as built it conformed strictly to those plans and specifications. Again, appellant insists that the court erred in refusing to allow evidence of what it designates the fraudulent representations of respondent, which fraudulent representations are alleged to be representations to the effect that respondent had built other dredges which had proved their capacity and that the dredge which it would build would be equal to the work required

of it and that respondent knew the character of the ground
in which the dredge was to work. But, as has been said,
appellant was abundantly able to protect itself in all these
matters which were antecedent to the contract, by the sim-
ple method of requiring a warranty in the contract itself.
There is not the slightest intimation that any fraud attached
to the execution of the contract, and the court was right
in excluding the offered evidence. What has here been said
is equally applicable to the numerous objections made to the
court's other rulings in refusing admission to appellant's
proffered evidence. All of this evidence that was so rejected
was evidence of previous negotiations and of surrounding
circumstances by means of which the effort was made to vary
in essential particulars without reformation the terms of the
contract in writing between the parties.

Appellant further alleges that plaintiff should not be al-
lowed a recovery because the dredge is a structure within the
meaning of the Mechanics' Lien Law, and that respondent
failed to file the contract as required by that law. In section
1183 et seq. of the Code of Civil Procedure, are found the
provisions of the code relating to mechanics' liens. Section
813 et seq. of the same code provides for a special lien upon
vessels and floating structures. It was never the intention
of the legislature to include a vessel under the provisions of
the general Mechanics' Lien Law. (26 Cyc., 755e; *Bartlett*
v. *Steam Dredge,* 107 Mich. 74, [61 Am. St. Rep. 314, 64
N. W. 951]; *Stewart* v. *Gorgonza,* Fed. Cas. No. 13,428 [3
Hughes, 459].)

To substantially every one of the instructions which the
court gave appellant raises objection. Respondent contend-
ing, as has been pointed out above, that the dredge was com-
pleted in August, asked for a judgment for the expenses
incurred and outlay made in the payment of the captain and
crew, amounting to $1051.50 for the thirty-five days imme-
diately after this asserted completion of the dredge.
Appellant disputed this, contending that during all the
intermediate time from August until the first day of October
the dredge was not in fact completed, and insisted that the
money was spent by respondent in putting the dredge into
working order so that it might comply with its contract. It
contended further that under no circumstances did the thirty-
five days begin to run until the 1st of October; that it was

not liable for the expenses incurred prior to that time and that it had paid all that was due after the 1st of October. Upon this phase of the controversy it proposed an instruction which the court gave in the following language, the words in parentheses being words in the proposed instruction stricken out by the court and the words in italics being words inserted by the court:

"You are further instructed that it was not incumbent on the defendant to pay the expense *incurred by plaintiff for* (of) operating said dredge at any time, excepting *the* (only the period of) thirty-five days named in the contract, and if you find from the evidence that it was the understanding and arrangement of the parties that said period of thirty-five days began to run on or about the first day of October, 1909, then I instruct you that the plaintiff can (not) recover from the defendant for the items (of labor and board aggregating $1051.50) *of labor and material* charged to the defendant, if for said period of thirty-five days, you find that, commencing on or about October 1st, 1909, the defendant began the payment, and thereafter for thirty-five days, continued the payment of the salary of the captain and crew, and the other expenses incident to the operation of said dredge for the ensuing thirty-five days."

It is manifest that the instruction proposed was sound as addressed to the contention of respondent, that is to say, it advised the jury that appellant was responsible for the operating expense of the dredge only for the period of the thirty five days named in the contract. The court so instructed the jury. Then, so proceeded the proposed instruction, if by consent of the parties this thirty-five days was to run from October 1st the appellant was not responsible for the $1051.50, expenses antecedently incurred by respondent. Such is the substance of the proposed instruction. The instruction which the court actually gave told the jury that while defendant was responsible only for the expenses incurred in the thirty-five days run, nevertheless if by agreement the thirty-five days run was to commence on October 1st and defendant had paid all of the expenses incident to that run, it was nevertheless responsible for the $1051.50 of the expenses antecedently incurred by plaintiff. There can be no need to expatiate upon the manifest error and injury of this instruction. So plain is it that we are convinced that

it was the result of an oversight of the court in its effort to remodel the proposed instruction. But the explanation of the cause does not remove the result, and the result is that upon a disputed question of fact the court positively instructed the jury to find for plaintiff. This court is not able to make a new finding. Its power is limited either to the ordering of a new trial or to a modification of the judgment, and under the conflicting evidence in the case it is not disposed peremptorily to order such modification. Therefore it is ordered that in the event that within thirty days from this date respondent files with the clerk of this court its consent to a modification of the judgment in its favor by the deduction therefrom of $1051.50, with legal interest from the date of the judgment, the judgment shall stand modified accordingly. But in the event that said consent be not so filed within said time, the judgment appealed from shall be reversed. (*Salstrom* v. *Orleans Bar etc. Co.,* 153 Cal. 551, [96 Pac. 292].)

Lorigan, J., and Melvin, J., concurred.