[Civ. No. 6057. First Appellate District, Division Two.—January 31, 1928.]

ELEANOR E. HOLLMAN, Respondent, v. F. W. HOLLMAN, Appellant.

Harry I. Stafford, Edward A. Cunha and Dean Cunha for Appellant.

Charles W. Byrnes and Robert L. McWilliams for Respondent.

BURROUGHS, J., *pro tem.*—This is an action upon a promissory note. Plaintiff recovered a judgment in the sum of $8,500 with also an attorney fee of $500. From said judgment the defendant appeals.

It is appellant's contention that he was entitled to a credit on said promissory note of $5,350 which the court failed to give him. This claim depends upon the construction of a certain contract entered into by the parties hereto under the following circumstances:

Plaintiff and defendant were husband and wife. July 14, 1921, they entered into an agreement for the purpose of settling and determining their property rights. So far as material to this decision said agreement recites:

"This agreement made this 14th day of July, 1921, by and between Fred W. Hollman, the party of the first part, and Eleanor E. Hollman, the party of the second part, both of the city and county of San Francisco, state of California, Witnesseth:

"That whereas, the party of the second part is about to commence a suit for divorce against the party of the first part, and has employed Charles W. Byrnes as her counsel for that purpose, and the party of the first part has employed Mr. Joseph H. Mayer to represent him in said suit, and

"Whereas said parties desire to avoid the expense of litigation over any and all questions as to their respective

property rights, including the right of said second party to temporary and permanent alimony, and

"Whereas said parties being fully and independently advised by their respective counsel, and each being fully informed as to his and her rights, duties and obligations growing out of their marriage relation, have come to an agreement as to each and all of said matters,

"Now, therefore, in consideration of the mutual covenants each to the other running, and of other good and valuable consideration each to the other moving, the parties hereto have agreed and do hereby agree as follows, to wit:

"1. That said first party hereby agrees to pay said second party the sum of fifteen hundred dollars ($1500) upon the execution of this agreement, and the additional sum of eight thousand five hundred dollars ($8500) within three years from the date hereof. Said sum of $8500 to be evidenced by a promissory note a copy of which is hereunto annexed and made a part hereof in full and marked Exhibit B. . . .

"2. That the said party of the first part further agrees to pay said party of the second part the sum of $150.00 per month, in advance, beginning with the date hereof, until the remarriage or death of said second party, or payment of said sum of $8500. It is further understood and agreed that said payments of $150.00 per month shall be reduced *pro rata* with the reduction by payments of the sum of $8500, and entirely cease when said sum of $8500 has been fully paid.

"In the event that said first party fails to pay said monthly payments for three months said party of the second part may, at her option, declare said sum of $8500 immediately due and payable. That the said second party shall have a lien for the payment of said $8500 upon the following described property, to-wit: . . .

"6. That said parties hereto have settled and do hereby forever settle all their property rights, including the right of the said second party to alimony, support and maintenance from the said first party. . . . "

█ The trial court held that the contract was ambiguous and permitted plaintiff to introduce oral evidence for the purpose of ascertaining the true intent and meaning of

the language of the contract. This, appellant contends, constituted error in that he claims the contract is clear and certain in its terms and subject to but one construction, that the monthly payments therein provided were to be applied to a reduction of the amount due on the promissory note. Counsel for respondent contends that the only interpretation that can be derived from the face of the contract is that the monthly payments are in no way connected with the amount due on the note, but constitute a separate and independent payment, but through an abundance of caution he offered and the court received the parol evidence and that, even though erroneously admitted, the court having set the right interpretation upon the contract, the introduction of such evidence was not injurious. This brings us to an interpretation of the terms of the contract.

It is undisputed that appellant obligated himself to pay respondent the gross sum of $10,000, $1,500 thereof to be paid in cash and the promissory note executed in accordance with the terms of the contract made the balance of $8,500. This is all provided for in paragraph one of said contract. The note provides that no interest shall be paid. Paragraph two of the contract provides for the further payment of $150 per month in advance until the happening of one of three contingencies therein provided, namely: the remarriage of respondent, her death, or the payment to her of the full sum of $8,500. It is further agreed in said paragraph that said monthly payments shall be reduced *pro rata* with the reduction by payments of the $8,500 and that when said last-named sum shall have been fully paid said monthly payments shall cease. It is further provided in said last-named paragraph that if the appellant fails to make the said monthly payments for three consecutive months, the whole amount of $8,500 shall immediately become due at the option of respondent. Taking this contract by its four corners, and bearing in mind that the first paragraph provides for the payment of a lump sum of $10,000, the second paragraph provides that appellant "further agrees to pay" respondent $150 per month. The following definition of the word "further" is found in Words and Phrases, volume 4, 1st edition, page 3016: "The word 'further' is not a word of strict legal or technical import. It may be used to introduce a negation or qualification of some pre-

cedent matter, but generally, when used as an adverb, our lexicographers (Webster, Walker, and others) inform us it is a word of comparison; that it means 'additional,' and is equivalent to 'moreover, or furthermore; something beyond what has been said, or likewise or also.' In this sense it is frequently used in statutes or legal instruments." (*Jones* v. *Creveling's Exrs.*, 19 N. J. L. (4 Har.) 127, 133.) Also, in the same volume, at page 3017, appears the following: "One meaning of the word 'further' is 'additional,' and in a complaint, the second count of which claimed the further sum of $1,990 as damages, implied a sum in addition to the amounts claimed in former counts. (*Thompson* v. *Southern R. Co.*, 116 Fed. 890, 891.)" We are of the opinion that these definitions are properly applicable to the contract under consideration and it was intended by the parties that the $150 per month therein provided was to be in addition to the gross sum of $10,000. This conclusion is strengthened by the remainder of the paragraph wherein it is provided that the monthly payments are to cease upon the happening of certain contingencies and the further proviso that the monthly payments are to be reduced *pro rata* with the reduction by payments of the sum of $8,500.

In appellant's opening brief it is said:

"It is superplain from the agreement that Hollman was to pay $10,000.00 in all—$1500.00 cash and $8500.00 within three years. In the meantime he was to pay on the note not less than $150.00 a month and if he did not—what was to happen?

"1. Mrs. Hollman had the right to foreclose her mortgage lien in the event he failed for three months by declaring the $8500.00 immediately due and payable (Reporter's Transcript, page 35, lines 21 to 24).

"2. On payment of the $8500.00 all payments should entirely cease (Reporter's Transcript, page 35, line 20).

"3. The agreement says that the payments of $150.00 shall be reduced *pro rata* with reductions of the payments of $8500.00 (Reporter's Transcript, page 35, lines 12 to 19).

"It is too obvious for comment that the monthly payments of $150.00 bore a direct—(*pro rata* to use the term of the agreement) relation to the $8500.00 note or balance."

But the agreement does not coincide with these conclusions of counsel. Nowhere does the agreement say that the

monthly payment was to be applied to the reduction of the note. Neither does it say that the note is to be reduced by such payments, but 'that the payments of $150 per month are to be reduced in proportion to the payments on the note. In other words, if appellant pays one-half of the note then the monthly payment would be reduced to one-half the amount provided for in the contract. The construction contended for by appellant cannot be reached except by interpolating into the contract language which would change its meaning. It is a further contention of appellant's counsel that because the trial court during the progress of the trial expressed views favorable to appellant's construction of the agreement it is clearly shown that the admission of parol evidence constituted reversible error and that without said evidence appellant would have obtained a judgment. But such is not the conclusion to be drawn by the attitude of the trial court. It is evident that the court receded from its previous attitude as to a construction favorable to defendant appearing on the face of the contract because of his allowance of the introduction of parol evidence. ■ However, we cannot conceive of any possible construction that would give the result claimed by appellant and if we are wrong in the conclusion that the contract is unambiguous we are satisfied that the introduction of parol evidence was proper. The law providing for the admission of parol evidence concerning written instruments is found in section 1860, Code of Civil Procedure, wherein it is provided that "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

In *United Iron Wks.* v. *Outer H. etc. Co.*, 168 Cal. 81 [141 Pac. 917], it is held that the foregoing section of the code simply re-enacts the common-law rule that where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other than what they said, but by showing what they meant by what they said, parol evidence is admissible. In the light of this rule we will review the oral testimony material to the construction of the contract

in the case at bar. Joseph Mayer, who was the attorney for the defendant in the preparation of the contract, and present when it was executed, testified in part as follows: "Well, Mrs. Hollman was insisting upon receiving from Mr. Hollman $10,000; and Mr. Hollman said he was not in a position to pay $10,000 in cash; that he would pay her $1500 in cash, and make a note for $8500. And the question of alimony came up, and Mrs. Hollman was insisting upon $250 per month, and Mr. Hollman took the position that he could not pay $250 per month; that he could pay $150; with the understanding that in the event he paid a certain portion of the note, the amount of alimony should be reduced. That was the substance of the agreement arrived at." Charles W. Byrnes testified: "Mrs. Hollman stated she wanted $10,000 and alimony in the sum of $250 a month. . . . Mr. Hollman said that he was not willing to pay $250 a month, and was willing to pay $150 a month alimony . . . " Mrs. Eleanor Hollman testified: "Mr. Hollman agreed to give me $150 a month alimony and I was asking for $250; . . . I wanted interest on the note, and Mr. Hollman would not give me any interest on the note, and said that within four or five months that he would pay me a certain amount on that note, something like $4,500 or $5,000; and at that time when he had given me that money, why then the alimony would be reduced accordingly, but he never gave me the money, and he never gave me any money on the $8500 note." May 16, 1922, the appellant wrote a letter to Mr. Charles W. Byrnes, concerning certain properties in which he states that certain contingencies which might have arisen would not have been very gratifying to either the writer or to Mrs. Hollman, "especially if she expects me to pay the $8500 note which she holds."

As against this testimony we have that of the appellant wherein he says in response to a question asked him as to the application of the monthly payments of $150, that they were to be applied on the $8,500 note.

It must be conceded that if this was a proper case for the admission of parol testimony the trial court was clearly correct in placing a construction on said testimony favorable to the plaintiff herein. In any event, it was for the court to determine the preponderance of the evidence and its finding on that question cannot be disturbed on this appeal. If, on

the other hand, it was not a proper case for parol testimony then its admission under the case of *Provident G. Min. Co.* v. *Manhattan S. Co.*, 168 Cal. 304 [142 Pac. 884], was not reversible error. In the latter case the court admitted parol evidence, but it was held that the contract was not ambiguous or uncertain but, ''Since the court set the right interpretation upon the contract, the introduction of this evidence was not injurious. The same result would have been reached necessarily without that evidence.'' We cannot conceive of any construction of the contract that would reach the interpretation placed thereon by counsel for appellant, with or without the aid of the parol evidence.

We believe the judgment of the trial court is correct and must be affirmed. It is so ordered.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 29, 1928.

All the Justices concurred.